553 A.2d 894

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Seymour H. BRAUN, Respondent.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1988.

Decided Jan. 27, 1989.

Seymour H. Braun, John E. Quinn, Pittsburgh, for respondent.

Helen M. Kistler, Asst. Disciplinary Counsel, Pittsburgh, for Disciplinary Bd.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This disciplinary proceeding presents the question of whether respondent attorney's admitted egregious misconduct is sufficiently mitigated by evidence of psychiatric illness to justify the sanction of suspension rather than disbarment. We hold that respondent, Seymour H. Braun, presented psychiatric testimony which established that his neurotic depression was a causal factor in his misconduct, and therefore adopt the recommendation of the Disciplinary Board that he be suspended from the practice of law for two years.

In November, 1980, respondent undertook to represent an executrix in administering her decedent's estate. The assets of the estate included cash, shares of stock, and periodic stock dividends. The executrix received the stock dividend checks and forwarded them to respondent, who deposited them in the estate checking account.

During the period from March, 1982 to September, 1984, respondent established a pattern of forging the signature of the executrix in order to withdraw funds from the estate for his own use without her knowledge or consent. On fifteen occasions, respondent forged his client's signature on checks totalling $1,962.94. From November, 1980 to September 1985, respondent took no action of record in the administration of the estate, failing, inter alia, to pay inheritance tax or to file inventories or accounts. In March, 1985, when the executrix requested reimbursement for funeral expenses she had advanced, respondent deposited $750.00 in the estate account to cover the check he sent.

In September, 1985, a second attorney was retained to replace respondent due to his malfeasance and his refusal to communicate with his client. Respondent subsequently reimbursed the estate account in full for the funds he had converted.

Respondent's derelictions resulted in investigation and detection by the Disciplinary Board, and, when exposed, respondent admitted the foregoing facts and hearings were held to determine his culpability. He submitted to evaluation by a psychiatrist selected by petitioner, the Office of Disciplinary Counsel (ODC), and both the ODC and respondent presented psychiatric testimony in these proceedings. Both psychiatrists agreed that respondent suffered from neurotic depression, and respondent's psychiatrist, who treated him in 1976 and 1986, testified that the condition persisted during the intervening years while respondent's misconduct took place and that the psychiatric disability was a causative factor in the misconduct.

The foregoing record moved the hearing committee to recommend a two-year suspension despite the fact that the

committee found no causal connection between respondent's mental disability and his professional misconduct. The Disciplinary Board, on the other hand, found that respondent's mental disability was a factor in causing the misconduct, and also recommended that he be disciplined with a two-year suspension. On July 15, 1988, this Court ordered respondent's immediate suspension from the practice of law and issued a rule to show cause why he should not be disbarred.

In determining the appropriate sanction which should be imposed, the primary question is whether the record supports the finding that respondent's psychiatric condition of neurotic depression was a factor in causing his admitted egregious misconduct. His conduct transgressed DR 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation; DR 1-102(A)(6), dealing with conduct adversely reflecting on the fitness of an attorney to practice law; DR 6-101(A)(3), dealing with conduct involving neglect of a legal matter entrusted to an attorney; DR 9-102(B)(3), dealing with the maintenance of complete records of funds of a client and the rendering of appropriate accounts of the funds; and DR 9-102(B)(4), dealing with the prompt payment or delivery to a client, as requested by the client, funds in the possession of the lawyer which the client is entitled to receive. Such misbehavior, of course, would warrant the most severe sanction, disbarment, rather than suspension, unless significant mitigating factors impinge on the decision. *See, e.g., Office of Disciplinary Counsel v. Wittmaack*, 513 Pa. 609, 522 A.2d 522 (1987) (disbarment for forgery, moral turpitude, fraud or misrepresentation, and failure to disclose conflict of interest); *Office of Disciplinary Counsel v. Kissel*, 497 Pa. 467, 442 A.2d 217 (1982) (disbarment for forgery, conversion, dishonesty or moral turpitude, and actions prejudicial to client); *Office of Disciplinary Counsel v. Lewis*, 493 Pa. 519, 426 A.2d 1138 (1981) (disbarment for failure to distribute monies due and owing to clients, dishonesty or misrepresentation, neglect, and moral turpitude).

Our review in disciplinary cases is *de novo;* we are not bound by the findings of the hearing committee or the Disciplinary Board, except as guidelines for judging credibility of witnesses. *Office of Disciplinary Counsel v. Wittmaack,* 513 Pa. 609, 522 A.2d 522 (1987). Nevertheless, we accord substantial deference to the findings and recommendations of the Board. In this case, the Board found that respondent's psychiatric disability mitigated his misconduct, as it was a factor in inducing the misconduct.

The record supports this finding by the Board. Respondent's psychiatrist, Dr. Slagle, testified that respondent's neurosis resulted in "procrastination, withdrawal, ... [and] giving up." N.T., 8/27/87, 8. Petitioner's expert, Dr. McDonough, likewise testified that patients suffering from neurotic depression "lose interest in their work, socializing, talking ... [and] may just stay home and not go out at all." *Id.* at 81.

The experts disagreed as to whether the neurosis caused respondent to engage in illegal conduct. Dr. Slagle testified that he "set himself up to be punished" due to guilt feelings because he had "a need to be caught and then the guilt relieved by some punitive force...." *Id.* at 13–14. Although Dr. McDonough did not agree, he did not entirely rule out the possibility that the "self-punitive" characteristic of neurotic depression could have caused the illegal conduct. *Id.* at 82–83.

We conclude, as the Board did, that the evidence supports the finding that respondent's neurotic condition was a causal factor in producing the several elements of his professional misconduct. Psychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding, and in this case, the psychiatric disorder persuades us to impose a sanction less severe than disbarment.[1]

---

1. It should be noted additionally that reinstatement does not automatically follow a period of suspension. Rather, a suspended attorney may, following the expiration of his suspension, file a petition for reinstatement, which will be granted only upon hearings which demonstrate:

We therefore adopt the recommendation of the Disciplinary Board, and order that respondent be suspended from the practice of law in Pennsylvania for a period of two years.

PAPADAKOS, J., files a dissenting opinion.

McDERMOTT, J., notes his dissent.

PAPADAKOS, Justice, dissenting.

I respectfully dissent from the majority's holding that the evidence of psychiatric illness sufficiently mitigates the Respondent's egregious misconduct so as to justify the sanction of suspension rather than the disbarment. I disagree with the Court's disposition of this matter for several reasons. My review of the record convinces me that the Respondent has not carried his burden of establishing, by clear and convincing evidence, a connection between his psychiatric illness and his acts of misconduct. Therefore, there are no mitigating circumstances in this case. Respondent has engaged in conduct which is illegal, dishonest and deceitful, and I recommend that he be disbarred.

At the hearing of evidence in mitigation of the discipline to be imposed on August 28, 1987, Respondent presented the testimony of a psychiatrist, Edward H. Slagle, M.D., and his own testimony with regard to his history of neurotic depression and treatment thereof. The testimony shows that Respondent sought help for his depression on two occasions, first in 1976 and second in late October 1986. Neither of these occurred during the relevant time period

by clear and convincing evidence that such person has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

Rule of Disciplinary Enforcement 218(c)(3)(i).

when the misconduct took place. Respondent represented the executrix in administering her decedent's estate from November of 1980 to September 1985, during which period he took no action of record with regard to the estate. He did, however, manage to forge the name of his executrix to fifteen checks between the period of March 1982 and July 1985. Respondent claims to have been severely depressed during the entire period (1980 through 1985). Yet he sought no treatment whatsoever during that period. The only basis for Dr. Slagle's diagnosis as to Respondent's condition during that time period was Respondent's own assertion that he was depressed. With regard to the causal connection between the depressed condition and the misconduct, the most Dr. Slagle could say was that he thought that Respondent set himself up to be punished because of guilt feelings. When asked whether neurotic depression would cause a person to engage in forgery or misappropriation of client funds, Dr. Slagle said "I would say sometimes" (N.T. 21). However, upon further questioning for clarification purposes, Dr. Slagle talked in terms of neglect or morally dishonest conduct rather than legally dishonest conduct.

Dr. Patrick McDonough, Petitioner's expert, testified regarding the symptoms of neurotic depression. His testimony for the most part agreed with Dr. Slagle as to the general symptoms of depression; however, he unequivocally stated that the symptoms did not include dishonest or illegal conduct. He testified that in his professional opinion the neurotic depression *did not* cause Respondent to misappropriate the funds or engage in forgery (N.T. 81–84). Further, he testified that the self-punitive conduct which is characteristic of neurotic depression ordinarily takes the form of actual physical harm to the person, i.e., cutting the wrists or taking pills in a suicide attempt, and does not involve engaging in conduct to harm third parties (N.T. 82).

Respondent admitted that he committed the forgeries, that he knew what he was doing was wrong, and he was

aware of the consequences. I find the fact that Respondent attempted to conceal his misconduct by replacing funds which he had misappropriated when he feared discovery of his very careful forgeries to be in conflict with the theory advanced by Dr. Slagle that Respondent was setting himself up to be punished. I also find it interesting that Respondent only sought treatment for his depression after he received the letter of allegations from the office of Disciplinary Counsel. I would also like to note that forgery and conversion are crimes in this Commonwealth and, if criminal charges are brought, neurotic depression would not constitute a defense to such charges. The Hearing Committee report noted that the Respondent received an informal admonition for violation of DR 6–101(A)(3) in 1983, but he sought no help for his alleged depressive condition at that time. In fact, at no time during the three year period during which Respondent engaged in the forgeries and misappropriation did he seek treatment for his depression. Further, Dr. Slagle testified that Respondent clearly has not progressed to the point where he is cured or able to function without monitoring. He also cannot provide any assurances that Respondent's depression will not recur or that Respondent will not be a danger to the public.

The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system. *Office of Disciplinary Counsel v. Keller,* (citations omitted) 509 Pa. 573, 579, 506 A.2d 872, 875 (1986). In light of the serious breaches of trust engaged in by the Respondent and the lack of any mitigating circumstances, the imposition of suspension for a two year period is an inadequate response if we intend by our disciplinary process to engender the public perception of confidence in our system. *Id.,* 509 Pa. at 579, 506 A.2d at 875. I would, therefore, make the Rule to Show Cause why Respondent Should not be Disbarred absolute and disbar Seymour H. Braun from the practice of law within the Commonwealth of Pennsylvania.