**In re Anonymous No. 12 D.B. 89**

Disciplinary Board Docket no. 12 D.B. 89.

GILARDI, *Member,* May 22, 1990—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommen-

dations to your honorable court with regard to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was charged, in six counts, with willfully failing to pay federal income tax (a misdemeanor) in calendar years 1980 through 1985. See 26 U.S.C. §7203. He was tried in the United States District Court for the [   ] District of Pennsylvania. A guilty verdict was rendered as to each count. Thereafter, the district judge placed respondent on probation for a period of five years. Special conditions were also contained in the District Court's probation order.

By letter dated February 1, 1989, the Supreme Court of Pennsylvania referred the matter of respondent's criminal conviction to the Disciplinary Board for "expeditious disposition."

A petition for discipline was filed by the Office of Disciplinary Counsel on March 30, 1989. The petition avers that respondent's conviction constitutes a per se ground for discipline pursuant to Rule 203(b)(1), Pa.R.D.E., and also alleges that respondent's criminal conduct was violative of the Code of Professional Responsibility. Specifically, the petition for discipline avers that respondent violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(1), which prohibits an attorney from violating a Disciplinary Rule;

(b) D.R. 1-102(A)(3), which prohibits an attorney from engaging in illegal conduct involving moral turpitude;

(c) D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and

(d) D.R. 1-102(A)(6), which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law.

Respondent filed an answer to the petition for discipline wherein he admitted that his criminal conviction constituted grounds for discipline. He also admitted that his conduct violated Disciplinary Rules 1-102(A)(6) and 1-102(A)(1). Respondent's answer also contained new matter which alleged that respondent's misconduct was "directly and indirectly caused by his addiction to gambling."

On November 2, 1989, a hearing on the matter was held before Hearing Committee [ ], consisting of [ ].

The Office of Disciplinary Counsel recommended, in its brief to the hearing committee, that respondent be suspended for one year, and further that the suspension be stayed entirely, and that respondent be placed on probation for three years subject to conditions. Office of Disciplinary Counsel's brief to hearing committee at 14.

Counsel for respondent, in its brief to the hearing committee, urged that appropriate discipline would be a public censure with or without probation. However, respondent noted that he did not vigorously oppose Disciplinary Counsel's recommendation of a suspended sentence and probation. Respondent's brief to hearing committee at 21.

On January 24, 1990, the hearing committee filed its report and recommended that respondent receive a public censure without probation. Neither the Office of Disciplinary Counsel nor respondent filed briefs excepting to the hearing committee's report. The matter was adjudicated by the Disciplinary Board at its March 9, 1990 meeting.

## FINDINGS OF FACT

The board makes the following findings of fact:

(1) Respondent was admitted to practice law before the Court of Common Pleas of [ ] County in 1961, and before the Supreme Court of Pennsylvania on May 24, 1966. (Pet. for discipline §2; resp. answer §2.)

(2) On April 1, 1987, respondent was charged by information in the United States District Court for the [ ] District of Pennsylvania in the matter captioned *United States of America v. [Respondent]*, and docketed at no. [ ]. (Pet. exh. 1.)

(3) The information charged respondent with six counts of willful failure to pay federal income taxes for the calendar years 1980 through 1985, inclusive, in violation of 26 U.S.C. §7203. (Pet. exh. 1.)

(4) The six counts in the information charged that in the respective calendar years 1980 through 1985, inclusive, respondent had received taxable income, on which he failed to pay federal income tax.

(5) Willful failure to pay federal income taxes is a misdemeanor under Title 26, United States Code, section 7203, punishable by a period of imprisonment of up to one year.

(6) The crimes of which respondent was convicted are within the definition of Enforcement Rule 214(a).

(7) Enforcement Rule 203(b)(1) provides that conviction of a crime under Enforcement Rule 214(a) shall be grounds for discipline.

(8) Respondent has made substantial payment on his Pennsylvania state tax liability, and has reached an agreement with the Delinquency Section of the Personal Income Tax Division to repay his liability in the amount of $1,000 per month. (Resp. exhs. 18 and 19.)

(9) Respondent complied with Enforcement Rule 214(a) which requires that an attorney convicted of a specifically defined crime report the fact of his conviction to the secretary of the board within 20 days of sentencing.

(10) Disciplinary Counsel certified the matter of respondent's conviction to the Supreme Court pursuant to Enforcement Rule 214(c).

(11) Pursuant to Enforcement Rule 214(f), the Supreme Court referred the matter of respondent's conviction to the Disciplinary Board for the institution of a formal proceeding.

(12) An attorney's certificate of conviction of a crime punishable by imprisonment for one year or more is conclusive evidence of the commission of that crime in any disciplinary proceeding based on the conviction. Pa.R.D.E. 214(e).

(13) Respondent has admitted violating D.R. 1-102(A)(1) and (A)(6). (See answer to petition for discipline.)

(14) The Supreme Court of Pennsylvania has not placed respondent on interim suspension from the practice of law pursuant to Pennsylvania Rule of Disciplinary Enforcement 214. (N.T. 133.)

(15) Respondent is 60 years of age. His date of birth is December 12, 1929. (N.T. 103.)

(16) Respondent is married to [A] and the date of his marriage is April 1953. He is still married and resides with his wife. There were six children born of the marriage. (N.T. 103.)

(17) Respondent served in the United States Navy from 1948 to 1952 and was honorably discharged. (N.T. 104.)

(18) Respondent attended [   ] School of the University of [   ] for three and one-half years and was subsequently accepted into the University of [   ]

Law School. Respondent graduated from the University of [ ] Law School in 1960. (N.T. 105.)

(19) Respondent started to work in the District Attorney's Office of. [ ] County in 1960 as an indictment clerk. Respondent subsequently became an assistant district attorney and remained in the [ ] District Attorney's Office until 1966. During that time, he served on the major trial staff and also was chief of the Family Court Division. (N.T. 106.)

(20) After respondent left the District Attorney's Office in 1966, he practiced law as a sole practitioner with an office at [ ]. (N.T. 106, 107.)

(21) Respondent's office is presently located at [ ] in [ ]. (N.T. 107.)

(22) Respondent, on March 6, 1989, formed a legal partnership with his son, [B]. (N.T. 107, 108.)

(23) Respondent's law practice emphasized criminal law initially but, at present, his practice emphasizes domestic relations matters, real estate matters and personal injury cases. (N.T. 108.)

(24) Respondent has never been disciplined previous to the present charges and allegations. (N.T. 108.)

(25) Other than suits involving gambling debts, respondent has never been the subject of any lawsuit that would raise any question as to his fitness to practice law. (N.T. 109.)

(26) Respondent fully admitted he was a compulsive pathological gambler. He indicated he first started gambling in 1968 and continued to gamble through 1984. (N.T. 109.)

(27) Respondent described how his addiction would cause him to drive to Atlantic City even in the middle of blinding snowstorms where cars were having accidents literally all over the road, but his addiction compelled him to gamble. (N.T. 116.)

(28) Respondent testified that during the period of 1970 through 1984 he always filed his federal tax returns and filed the returns accurately. (N.T. 117.)

(29) Respondent indicated it was always his purpose and intent to pay his federal taxes. Because of his addiction to gambling, he would constantly gamble and lose the tax money. (N.T. 118.)

(30) Respondent always filed waivers with the federal government so as to allow the statute of limitations to be extended. (N.T. 118, 119.)

(31) Respondent testified that he hit bottom when his house was placed on mortgage foreclosure and it was advertised for sheriff sale on October 19, 1984. (N.T. 120, 121.)

(32) Respondent indicated his wife had to go to Attorney [C] and file for personal bankruptcy. At that time, respondent took steps to try to come to grips and understand his gambling addiction. (N.T. 121, 122.)

(33) Respondent described in detail his gambling addiction and told how irrationally the addiction caused him to act. For example, he wrote to race tracks in other states to see what forms of betting they had. (N.T. 110-12.)

(34) Respondent testified that during the time of his gambling addiction he maintained his law practice, practiced law regularly, and, to his knowledge, was always prepared for every case. (N.T. 112-14.)

(35) Respondent initially gambled at race tracks and then in 1978, after the casinos in Atlantic City opened, respondent became a regular gambler there. (N.T. 113, 114.)

(36) Respondent testified he attempted to hide his gambling both at the race track and later in Atlantic City. He indicated his game of choice ended up to be

baccarat because it took place in a private room and people could not see him. (N.T. 113, 114.)

(37) Respondent testified he lost almost all his assets through gambling in the 1970s and early 1980s. (N.T. 115.)

(38) Respondent was depressed and decided that he wanted help for his gambling problem. (N.T. 122.)

(39) Dr. [D], a board-certified psychiatrist, testified on behalf of respondent. Respondent sought treatment from Dr. [D] for his gambling problem in September 1984. (N.T. 81; answer of respondent to petition for discipline, exhibit B, at 1.)

(40) Respondent gave a history to Dr. [D] that was consistent with the pattern of a compulsive and pathological gambler. (See Dr. [D's] report, at 1.)

(41) Dr. [D] explained that the pathological gambler is unable to resist impulses to gamble. (N.T. 76.) Dr. [D] discussed pathological gambling in detail (N.T. 76-8) and referred to the *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association. The revised third edition of this work is known as DSM-III-R. This manual provides a classification of mental disorders. The American Psychiatric Association first recognized pathological gambling as a mental disorder in the early 1980's. (N.T. 78-79.)

(42) Dr. [D] diagnosed respondent as suffering from a pathological gambling disorder. (N.T. 83.)

(43) Dr. [D] referred respondent to addiction counseling for treatment of his pathological gambling disorder. (N.T. 83.)

(44) Dr. [D] still sees respondent in connection with the conditions of his federal court probation. (N.T. 82-83.)

(45) Dr. [D] is of the opinion that respondent suffered from a pathological gambling disorder (N.T. 83); that respondent has achieved and has remained in a state of recovery (N.T. 86, 92); and, that his prognosis is excellent, and he will probably not return to gambling (N.T. 86, 92.)

(46) Respondent then sought treatment from [E] who counsels compulsive gamblers. [E], one of the pioneer counselors in this field, is a recovering compulsive gambler who has been counseling on a full-time basis for the past 12 years. (N.T. 28, 29.)

(47) In addition to his counseling activities, [E] also writes, lectures, and consults on pathological gambling disorders. (N.T. 28-29.)

(48) Respondent first saw [E] on October 3, 1984. Respondent had hit rock bottom when he sought treatment from [E]. Respondent's house was up for sheriff's sale (N.T. 45), and gambling had caused serious problems in other aspects of his life (N.T. 47). Respondent had accepted his problem, and was ready and willing to receive help when he sought out [E]. (N.T. 47.)

(49) [E] was of the opinion that respondent was suffering from a compulsive gambling disorder. (N.T. 60.)

(50) [E's] treatment consisted of counseling respondent on a one-to-one basis, with constant supervision of respondent for an extended period of time. (N.T. 41-43.) The treatment included respondent's not gambling and learning to handle problems without gambling. (N.T. 41.) Respondent also had to learn to restructure his priorities (N.T. 51), and put his life in order (N.T. 52).

(51) [E] had treated respondent since October 3, 1984. (N.T. 44, 52, 53, 54.) He still sees respondent one or two times a month, and is in contact with him

almost on a weekly basis. These contacts are therapeutic and part of the recovery process. (N.T. 53, 54.)

(52) [E] opined that respondent has arrested his pathological gambling disorder, is in recovery, is not gambling, and will not return to gambling. Respondent has recovered in the sense that he no longer gambles. (N.T. 60-63.)

(53) Respondent testified that he will never gamble again and would never want to test himself. (N.T. 125.)

(54) Besides treating with [E], a gambling therapist, for all these years, respondent has continued contact with Dr. [D] since his federal conviction. (N.T. 125, 126, 82.)

(55) Respondent testified that he is complying with all the terms of his federal probation and he is paying his federal taxes on the schedule as set forth in the sentencing schedule. (N.T. 126, 127.)

(56) Respondent also testified that he initiated contact with the Commonwealth of Pennsylvania, has filed all back tax returns due the Commonwealth of Pennsylvania and has begun making payments on a schedule to resolve any state tax liability. (N.T. 127.)

(57) Respondent has indicated he has presently filed all his tax returns and paid his current tax liabilities. (N.T. 127, 128.)

(58) Respondent testified his law practice is properly maintained and he has always properly maintained an escrow account and a separate checking account. (N.T. 128, 129.)

(59) Respondent testified he is familiar with and has read the Code of Professional Responsibility and will promise to fulfill his obligations pursuant to the code. (N.T. 129.)

(60) Respondent testified that practicing law is essentially his life. Respondent has indicated that he has tried several hundred civil and criminal jury trials and many more non-jury trials. He is an experienced trial lawyer. (N.T. 129, 130.)

(61) Respondent has testified that he has helped other people with compulsive gambling disorders and will continue to do that in the future. He also indicated that he is considering approaching the Bar Association once the present proceeding is resolved to consider establishing a committee in order to assist lawyers who have gambling addictions. (N.T. 131, 132.)

(62) Respondent expressed his great remorse and shame. (N.T. 133.)

(63) Respondent presented character witnesses who testified as to his excellent reputation in the community for truthfulness and honesty, as a law-abiding citizen and as a practicing attorney. Among those presented to testify were attorney [F]; attorney [G]; attorney [H]; attorney [I], who is also jury commissioner of the City of [ ]; and attorney [J], who was formerly chancellor of the [ ] Bar Association. (N.T. 15-27.)

(64) Respondent's son [B] testified. He stated that he was recently admitted in May 1988 to practice law, and that he is in partnership with his father. He testified that he practices in a general practice with his father. He testified how he and his father work together on cases, how his father keeps current on the law, and how his father assists and teaches him in the practice of law. (N.T. 96-9.)

(65) Dr. [D] opined that respondent is mentally, emotionally, and intellectually able to practice law and quite competent to do so. (N.T. 88, 89.) Fur-

thermore, respondent lacks any underlying antisocial behavior or character defects. (N.T. 84, 89.)

## DISCUSSION

Our task is to recommend appropriate discipline in this case since respondent's conviction constitutes a basis for discipline pursuant to Rule 203(b)(1), Pa.R.D.E.* Procedurally, respondent's conviction, on six counts, of willfully failing to pay federal income tax is conclusive evidence that he committed the crimes as charged. We cannot relitigate the facts of the criminal case in this disciplinary proceeding. However, we must examine the underlying facts of the criminal case in order to weigh the impact of the conviction upon the measure of discipline to be recommended. *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

When we examine the underlying facts involved in the criminal charges we come to the conclusion that respondent was unable to resist impulses to gamble, and that his pathological gambling disorder led to income tax evasion. That respondent suffered from a pathological gambling disorder is beyond question, and no party to these proceedings has claimed otherwise. Respondent described his pathological gambling problem in his testimony, and his pathological gambling disorder was amply documented by the expert opinions of two professionals in the field.

Both experts were of the opinion that respondent suffered from a pathological gambling disorder

---

* Furthermore, respondent has admitted, in his answer to the petition for discipline, that he violated Disciplinary Rules 1-102(A)(6) and 1-102(A)(1) by virtue of his criminal conduct. These violations are also grounds for discipline.

(N.T. 60, 83); that respondent has achieved and has remained in a state of recovery (N.T. 60-63, 92); that his prognosis is excellent; and that he will probably not return to gambling (N.T. 60-63, 86).

Respondent violated the tax laws as a result of his compulsive gambling. However—as Disciplinary Counsel pointed out—respondent did not harm his clients as a result of his pathological gambling disorder, and the gambling problem did not affect respondent's competence. (Office of Disciplinary Counsel's brief at 12.)

We must determine what effect, if any, respondent's pathological gambling disorder should have upon our recommendation for discipline. We first note that we will not consider a pathological gambling disorder as a defense to a petition for discipline. However, Mr. Chief Justice Nix has pointed out that it is proper to consider mitigating factors in a disciplinary proceeding. In delivering a public censure, he stated, "In any system of civilized justice mitigating factors must be given appropriate weight." *Office of Disciplinary Counsel v. McKinley,* Disciplinary Docket no. 2, no. 709, at 3 (Pa. 1989).

Is a pathological gambling disorder a mitigating factor to be considered in determining discipline? Our Supreme Court has said that a "psychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding." *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). Dr. [D] testified that the American Psychiatric Association has recognized pathological gambling as a mental disorder since the early 1980s. (N.T. 78, 79; see respondent's exh. 6.) The *Diagnostic and Statistical Manual of Mental Disorders* (DSM-III-R), published by the American Psychiatric Association, classifies pathological gambling as

an impulse-control disorder. (Resp. exh. 6.) Dr. [D] diagnosed respondent as suffering from a pathological gambling disorder. (N.T. 83.) Dr. [D] also stated, in his report, that respondent's gambling addiction also "assumed the proportion of a mental illness. . ." (Dr. [D's] report at 13.) In view of the expert testimony, Dr. [D's] report, and the psychiatric literature that was introduced in this case, we conclude that respondent established that his pathological gambling disorder is a "psychiatric disorder" and an appropriate mitigating factor to be considered in recommending discipline within the meaning of the *Braun* case.

Respondent's pathological gambling directly led to the charges of misconduct in this case. Respondent filed accurate federal tax returns every year (N.T. 117); however, he did not pay his taxes. The tax money was used for gambling. Respondent was "chasing this dream" wherein he thought that his wins would exceed his losses. (N.T. 118.) Respondent's willful failure to pay federal taxes led to his conviction which in turn led to this disciplinary proceeding. Simply put, his tax evasion conviction was a by-product of his pathological gambling disorder. (See Dr. [D's] report at 13.) The record evidence clearly establishes that respondent's pathological gambling disorder was a causal factor in his willful failure to pay taxes. We conclude that a sufficient nexus between respondent's pathological gambling and his misconduct has been established by clear and convincing evidence. The record supports the finding that respondent's mental disorder of pathological gambling was a factor in causing his egregious misconduct. *Office of Disciplinary Counsel v. Braun, supra.*

The record in this case is laced with sadness and with hope. It sadly traces the progress of respon-

dent's pathological gambling disorder. His first big win led to an obsession that ultimately consumed his time and a good portion of his life. The seeds of his downfall were sown while he was gambling. Ironically, his downfall occurred after he stopped gambling, for it was then that he was convicted of tax evasion. The record also traces his recovery, and this is the aspect of the case that is laced with hope. Respondent confronted his pathological gambling disorder, willingly sought counseling, rearranged his priorities, and found workable solutions to the numerous life problems that gambling had created. Today, respondent abstains from gambling, has rebuilt his life, and through his growth has found a new way of life. In the words of Dr. [D], respondent's "prognosis is excellent." (N.T. 86.)

The record is replete with positive uncontroverted testimony of respondent's present fitness to practice law. Attorneys [F], [G], [H], [J] and [I], jury commissioner of the City of [ ], all attested to respondent's excellent reputation for veracity. (N.T. 17, 19, 21, 24, 26.) Respondent's son [B], who is his law partner, testified that his father is competent to practice law. (N.T. 102.) Dr. [D] testified that respondent is mentally, emotionally, and intellectually capable of practicing law, and lacks any underlying antisocial behavior or character defects. (N.T. 84, 89.) [E] stated that respondent had the most successful recovery of any of the 650 compulsive gamblers he has treated. (N.T. 61.) Based upon the foregoing testimony, we conclude that respondent is fit to practice law.

We have given careful consideration to the view of the parties and the hearing committee as to the type of discipline that is appropriate herein. There is significant evidence of continuing rehabilitation in this case. The record also strongly demonstrates

that respondent is unlikely to harm the public, or cause the courts or profession to fall into disrepute, if he is permitted to practice. After consideration of these factors, we are convinced that a period of actual suspension is unwarranted. We are likewise convinced that a public censure is inappropriate. Our review of the record persuades us that respondent will benefit from continued counseling. We, therefore, recommend that respondent be placed on probation pursuant to Board Rule 89.291.

## RECOMMENDATION

Accordingly, the board respectfully recommends to the Supreme Court of Pennsylvania that respondent be suspended from the practice of law for a period of one year, and that the suspension be stayed in its entirety, and that respondent be placed on probation for a period of two years subject to conditions. The conditions of probation recommended by the board are:

(1) Respondent shall abstain from gambling;

(2) Respondent shall meet with his counselor, [E], at least once a month during the period of his probation;

(3) Respondent shall maintain weekly telephone contact with his counselor, [E];

(4) Respondent shall cooperate fully with his counselor, [E];

(5) Respondent shall file quarterly written reports with the secretary of the board. The reports are to be completed by his counselor on forms to be provided by the board; and

(6) Respondent shall comply with all federal, state and municipal income tax laws and provide verification thereof by providing the secretary of the board with true and correct copies of his federal,

state and municipal income tax returns for the years he is on probation.

It is further recommended that the court direct respondent to pay all necessary expenses incurred in this proceeding pursuant to Rule 208(g)(1), Pa.R.D.E.

Messrs. Padova, Tumolo, Keller, Eckell and Dr. Gilbert did not participate in the adjudication.

## ORDER

And now, December 12, 1990, respondent's request for oral argument and a briefing schedule is denied and, upon consideration of the report and recommendations of the Disciplinary Board dated May 22, 1990, it is hereby ordered that [respondent] be placed on probation for a period of two years, subject to the following conditions.

Provided he pays the necessary expenses incurred in the investigation and processing of the petition for discipline; and further provided he agrees in writing, furnished to the Disciplinary Board, to abide by the following conditions of probation:

(1) Respondent shall abstain from gambling;

(2) Respondent shall meet with his counselor, Mr. [E], at least once a month during the period of his probation;

(3) Respondent shall maintain weekly telephone contact with his counsel, Mr. [E];

(4) Respondent shall cooperate fully with his counselor, Mr. [E];

(5) Respondent shall file quarterly written reports with the secretary of the board. The reports are to be completed by his counselor on forms to be provided by the board; and

(6) Respondent shall comply with all federal, state and municipal income tax laws and provide verifi-

cation thereof by providing the secretary of the board with true and correct copies of his federal, state and municipal income tax returns for the years he is on probation.

Mr. Justice Flaherty dissents and would accept the recommendation of the Disciplinary Board.