## In re Anonymous No. 44 D.B. 82

Disciplinary Board Docket no. 44 D.B. 1982.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NIX, *Member,* October 31, 1994—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner was disbarred on consent by order of the Supreme Court dated July 30, 1982.

Petitioner filed a petition for reinstatement on August 26, 1993.

On August 27, 1993, the matter was referred to Hearing Committee [    ], consisting of [    ], Esquire, Chair, and members [    ], Esquire and [    ], Esquire.

Subsequently, [    ] was unable to attend the hearing and the parties agreed to proceed with a two member panel.

A hearing on the petition was held on April 8, 1994. Petitioner has filed a brief and Disciplinary Counsel has chosen not to file a brief in opposition to petitioner's brief.

The Hearing Committee filed its report on June 22, 1994, recommending petitioner's reinstatement to active status. Neither party filed exceptions to the Hearing Committee report.

The matter was adjudicated at the September 29, 1994 meeting of the board.

## II. FINDINGS OF FACT

(1) [ ], petitioner was born on May 10, 1950 and earned both her B.A. and J.D. degrees from the University of [ ], graduating from its law school in May 1974. She was admitted to the practice of law in Pennsylvania in the fall of 1974.

(2) From October 1976 until September 1977, petitioner was a partner with [A] in [ ]. She withdrew from the firm after it was discovered that she converted $2,020.90 of firm and client funds for personal support. The losses were covered by the remaining partners, whom petitioner later reimbursed.

(3) In May 1981, she joined with [B], Esquire to form [C]. Petitioner left the firm in March 1982, after it was discovered that she had misappropriated client funds held by the firm. The total amount of these conversions was somewhere between $25,000 and $40,000. (N.T. 101-102, 112.)

(4) After the misappropriations were uncovered, [B] repaid the clients' accounts so that no client suffered any

loss. Petitioner made restitution to [B] in November 1993. (N.T. 96-97, 102.) The amount of restitution paid to [B] was agreed to be $20,000 based on discussions between petitioner, [B] and counsel. In her October 21, 1993 letter (ODC exhibit 4), [B] advised that she considers the $20,000 restitution to be "fair and adequate." (ODC exhibit 4, paragraph a.) She also advises that, to the best of her knowledge, there are no pending unsatisfied claims by any clients. (ODC exhibit 4, paragraph b.)

(5) In addition to the $20,000 payment [B] received from petitioner, she also recovered part of her losses through her insurance. (N.T. 114-150.)

(6) In response to the investigation into her conversion of funds from [C], petitioner submitted her resignation to the Supreme Court of Pennsylvania on July 4, 1982. The court disbarred her on consent by order dated July 30, 1982. (Exhibit A to reinstatement questionnaire.)

(7) [Petitioner] dates her addiction to alcohol to approximately 1967 when she was in college at the University of [ ]. (N.T. 81; reinstatement questionnaire 17.1.) She continued drinking throughout law school and during the initial stages of her legal career. (N.T. 81.) During the time when she was an active alcoholic (1967 through March 1977), her alcoholism progressively disabled her from making the kind of professional and ethical judgments which the practice of law requires.

(8) While [petitioner] stopped drinking in 1977, she remained in a "dry drunk" condition for at least another five years. During this period, although petitioner was not drinking, her mental and emotional condition remained unchanged. (N.T. 70.) She continued to exhibit the symp-

toms of alcoholism, including dishonesty, lack of self-esteem and lack of judgment. (N.T. 67-69.) It was during this "dry drunk" period that she converted client and firm monies in 1981-82.

(9) An expert witness, [D], M.D., who is a board certified addictions specialist, testified that [petitioner] had become a chronic alcoholic before 1977 and remained in a condition of chronic alcoholism even after she commenced to abstain from alcohol. Between 1977 and 1982, [petitioner] was in a condition described as a "dry drunk" in which all of the mental and emotional signs of alcoholism except intoxication are present. Dr. [D] testified that this condition was causally related to the misconduct which brought about [petitioner's] resignation from the bar.

(10) [Petitioner] has been alcohol free for more than 17 years. More importantly, she testified to being truly sober for more than a decade. During the last 10 years she has returned to a much more vigorous practice of religion, utilizes meditation as a means of dealing with stress, and has adopted a regime of complete honesty in her daily life. (N.T. 91.) In short, she has turned her life around through an intensive program of rehabilitation.

(11) Since her disbarment, petitioner has worked as a paralegal for various attorneys. She does legal research, prepares pleadings and briefs, and does other legal work consistent with a paralegal's responsibilities. Her work has been characterized as very competent, dependable (N.T. 19), careful (N.T. 24) and honest. (N.T. 19.) She has performed research on dozens of topics during this period.

(12) Petitioner produced the testimony of [E], [F] and [G] who all testified to the high quality of her work as well as to her punctuality, ethical sensitivity and thoroughness.

(13) To maintain her currency, competency and learning in the law, [petitioner] has, in addition to performing paralegal work, also regularly read the Pennsylvania Reporter advance sheets and has attended the requisite PBI seminars.

## III. CONCLUSIONS OF LAW

At the time petitioner committed the misconduct that resulted in her disbarment, she was suffering first from active alcoholism (1971) and later the effects of the "dry drunk" syndrome (1981-82).

There was a cause-effect relation between petitioner's addiction and her conversion of client and partnership funds in both instances.

The misconduct for which petitioner was disbarred, although deplorable, is not so egregious as to preclude present consideration of her petition for reinstatement.

Permitting petitioner once again to enjoy the privilege of practicing law in this Commonwealth will not denigrate the public's perception of the bar and will demonstrate the bar's application of its disciplinary standards is in accordance with reality and sensitivity to public safety.

Petitioner has demonstrated by clear and convincing evidence that she has the present moral qualifications, competency and learning in law required for reinstatement to the practice of law.

The resumption of the practice of law within the Commonwealth by petitioner will be neither detrimental to the integrity and standing of the bar or harmful to the administration of justice nor subversive of the public interest.

## IV. DISCUSSION

The first inquiry that the board must make when considering a petition for reinstatement from a disbarred attorney is whether the "magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon 'the integrity and standing of the bar or the administration of justice nor subversive of the public interest.'" *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986).

This inquiry involves an examination of the behavior resulting in the disbarment. Petitioner converted partnership and client funds on two separate occasions over a five year period. However, no client suffered any loss as a result of petitioner's conduct. A substantial part of the converted money was applied to the accounts of other clients damaged by misconduct other than theft.

Unless a lawyer's conduct is "so repugnant to the integrity of the bar and contradictory to public interest that no passage of time or rehabilitation can cure the injustice the petitioner's reinstatement would cause," the *Keller* threshold inquiry is satisfied. *In re Anonymous No. 32 D.B. 83,* 14 D.&C.4th 136, 142 (1991). Although the conversion of client funds is a serious misconduct, it is not so egregious in the instant case to preclude readmission

after a considerable passage of time during which the former lawyer has rehabilitated himself/herself.

In *In re Anonymous No. 32 D.B. 83, supra,* the petitioner had been disbarred following his criminal conviction for theft by failure to make required disposition of funds. Petitioner had commingled and converted monies ($1,625.92) which had been sent by a client's insurance carrier for the purpose of compensating his client's treating physician. Petitioner also forged the signature of the doctor on one of the checks. On reinstatement, the board held:

"Although we are cognizant of the serious nature of [the] petitioner's misconduct, we are also aware that his regrettable actions are not so patently offensive as to warrant permanent exclusion from the bar. We arrive at this decision by considering whether petitioner's misconduct was so opposite the foundations of our legal system as to forever prohibit his resumption of the role of court officer because his integrity has been so compromised." *Id.* at 142-43.

It is this board's opinion that the misconduct of the petitioner is not so patently offensive, as to warrant her continued exclusion from the bar.

Petitioner testified that her indulgence in alcohol had a causal relationship to her inability to exercise sound moral judgment during the relevant time frame. This testimony was supported by petitioner's expert, [D], M.D., who identified a causal relationship between the disease and the misconduct as to both instances of conversion. This indulgence, although not a defense, may be considered a mitigating factor in the instant case. *Office of*

*Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

The second inquiry the board must make when considering a petition for reinstatement from a disbarred attorney is whether that attorney has recovered or has rehabilitated himself/herself from the addiction that had a causal connection to the misconduct in question.

The courts have consistently recognized that mitigating evidence based on a lawyer's addiction during the misconduct period and his/her subsequent recovery are relevant considerations in determining both discipline to be imposed and fitness to resume the practice of law. *In re Anonymous No. 5 D.B. 74,* 4 D.&C.3d 655 (1977); *In re Anonymous No. 2 D.B. 75,* 23 D.&C.3d 177 (1982); *In re Anonymous No. 32 D.B. 83, supra.*

The leading case on the effect of evidence of rehabilitation from addiction in reinstatement proceedings is *In re Anonymous No. 2 D.B. 75, supra.* In that case, the attorney-petitioner was convicted in 1975 of mail fraud relating to his practice of law and sentenced to a prison term. He was then disbarred on consent.

In 1981, he applied for reinstatement. At the hearing, he presented an expert on alcoholism and several recovery witnesses.

The Disciplinary Board found that the record established that the petitioner "was not always a dilatory, unethical practitioner," but that over the years he developed drinking habits that unfavorably affected every facet of his life to such a degree that he became "a professional, moral, [and] social bankrupt." *In re Anonymous No. 2 D.B. 75, supra* at 181.

Finally, determined to do something about his life, he quit drinking and joined Alcoholics Anonymous. Because petitioner presented substantial evidence supporting his recovery, the board recommended his reinstatement and the Supreme Court approved.

In the present case, there is abundant evidence demonstrating not only the extent of petitioner's incapacitation caused by her addiction, but that these problems have now been alleviated through her participation in Alcoholics Anonymous during her disbarment.

On the issue of [petitioner's] recovery, Dr. [D] observed that persons who live according to the Twelve Steps of the Alcoholics Anonymous program go through a spiritual and psychological change through the exercise of self-examination and self-honesty. (N.T. 75.) Alcoholics must discover and admit their character defects and change them. The recovering alcoholic learns self-evaluation and to be honest enough with himself/herself so that he/she can discard the negative personality traits characteristic of the immature alcoholic. (N.T. 76.) This is exactly what petitioner has done. Based upon her experience, specialized training in addiction medicine, and careful observation, Dr. [D] concluded that petitioner has been sincere in her recovery efforts and is "in a good position right now for continued abstinence and continued recovery." (N.T. 67.)

Other rehabilitation testimony came from [H], Esquire, [E], Esquire, [I], [J], and [K]. Each of these witnesses provided this board with some insight into the quality of petitioner's recovery and evidence that she has the

requisite moral qualifications to return to the practice of law without harm to the reputation of the bar.

Given the foregoing persuasive evidence recognizing recovery from alcoholism as a significant factor meriting reinstatement, it has been established by substantial, credible and uncontradicted evidence that petitioner's sincere and successful effort at rehabilitation establishes a clear and convincing case for granting reinstatement.

Rule 218(c)(3)(i), Pa.R.D.E. states that a disbarred attorney has the burden of establishing by "clear and convincing" evidence that: 1) she has the moral qualifications, competency and learning in law required for admission to practice law; and 2) that her readmission will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest.

Regarding petitioner's moral qualifications, she introduced substantial uncontradicted character evidence from members of the bar and the community, and also demonstrated her successful pursuit of recovery from alcoholism through a program which requires honesty, maturity and spirituality. In similar circumstances, the board has held such evidence carries the burden. *In re Anonymous No. 18 D.B. 78,* 49 D.&C.3d 298 (1988); *In re Anonymous No. 32 D.B. 83, supra.* Petitioner has established by clear and convincing evidence that she has the requisite moral qualifications for admission to the bar.

Petitioner must also provide, under Rule 218(c)(3)(i), Pa.R.D.E., that she possesses the learning in the law necessary to become again a member of the Pennsylvania Bar. [Petitioner] met this burden by attending the required

PBI seminars, regularly reading the Pennsylvania Reporter advance sheets and several legal periodicals, and staying abreast of the law through her extensive paralegal work. According to three of the attorneys ([G], [E] and [F]) for whom petitioner has worked during her disbarment, her work is excellent. She is considered a thoughtful and talented legal writer. (N.T. 14, 18-19, 24.) These witnesses also favorably commented on the care and ethical concern with which she performs her work. (N.T. 19, 24.) We find that this uncontradicted evidence provides her competency and learning in the law.

Finally, petitioner must prove that her reinstatement will not be detrimental to the integrity of the bar, the courts or the public interest. The testimony presented at the reinstatement hearing overwhelmingly established that, having successfully overcome her disability through strenuous effort, permitting petitioner once again to enjoy the privilege of practicing law in this Commonwealth will not distract from the public's perception, since it would demonstrate that the bar's application of its disciplinary standards is in accordance with reality and administered with a sense of justice.

Further, no evidence was offered that members of the bar or the general public would now oppose [petitioner's] readmission, given her recovery efforts and the character changes that she has undergone.

This board finds that petitioner's original transgression of converting funds, although deplorable and meriting disbarment at the time because of her serious breach of trust, is not so serious as to cause the public's perception of the bar to be lowered if petitioner were readmitted

today. Given the passage of time since the misconduct, the evidence that the cause of her problems has been addressed by a meaningful recovery program, the lack of public scandal at the time the conversions were discovered, and the restitution that she has made in these matters, we find that petitioner's reinstatement is warranted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [ ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Messrs. Witherel and Leonard did not participate in the adjudication in this matter.

## ORDER

And now, December 22, 1994, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated October 31, 1994, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Montemuro is sitting by designation.