## In re Anonymous No. 58 D.B. 94

Disciplinary Docket no. 58 D.B. 94.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WITHEREL, *Member,* February 27, 1996—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed by the Office of Disciplinary Counsel on June 21, 1994, against respondent based upon respondent's handling of the estate of [A], deceased. The petition alleged that respondent failed to act with reasonable diligence and promptness in representing a client (R.P.C. 1.3), failed to keep client informed about the status of a matter and promptly comply with reasonable requests for information (R.P.C. 1.4(a)), failed to hold property of clients or third persons within his possession in connection with a representation separate from his own property (R.P.C. 1.15(a)), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (R.P.C. 8.4(c)).

Following a pre-hearing conference on October 25, 1994, a hearing was held before Hearing Committee [   ] comprised of Chairperson [    ], Esq. and Members [    ], Esq. and [    ], Esq. Hearing Committee [   ] filed its report and recommendation on March 3, 1995. The Hearing Committee recommended a 60 day suspension; five years probation following reinstatement; one year of supervision following reinstatement during which periodic reports were to be submitted to the board; and that the respondent immediately undergo a psychological-sobriety evaluation and to submit to counseling if recommended by the evaluator. Petitioner filed a brief on exceptions on March 16, 1995.

The matter was adjudicated at the June 16, 1995 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsyl-

vania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], Esquire, was born in 1934, and was admitted to the practice of law in the Commonwealth of Pennsylvania in 1970.

(3) Respondent maintained an office for the practice of law at the time of these proceedings at [    ].

(4) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(5) On March 30, 1989, [A], decedent, died testate.

(6) Thereafter, [B], executor of decedent's estate and a resident of Virginia Beach, Virginia, met with respondent to discuss estate matters.

(7) Respondent orally advised [B] that he would charge a flat fee of $3,000 to represent him in the administration of the estate.

(8) On April 3, 1989, letters testamentary indicating respondent as the attorney of record were granted to [B].

(9) On or about June 21, 1989, respondent made a partial payment, in the amount of $2,200, of the Pennsylvania inheritance tax due.

(10) On October 22, 1990, the notice of inheritance tax appraisement, allowance or disallowance of deductions, and assessment of tax was sent to respondent by the Pennsylvania Department of Revenue. The notice indicated that:

(a) The balance of tax due was $837.91;

(b) The inheritance tax return was due on December 30, 1989; and

(c) An interest charge in the amount of $78.44 had accrued during the period spanning December 31, 1989 to November 6, 1990.

(11) Respondent did not file the inheritance tax return until September 11, 1990.

(12) On or about May 7, 1991, respondent made a payment of $962.08 to the Department of Revenue on behalf of the estate.

(13) On or about July 31, 1992, [B] called respondent, at which time he was able to speak to respondent.

(a) They agreed to meet at respondent's office on August 25, 1992.

(b) Respondent stated to [B] that he would contact him one week prior to the date of their scheduled meeting.

(c) Respondent did not contact [B].

(14) On or about August 24, 1992, [B] called respondent to confirm their appointment for August 25.

(a) Respondent informed him that he could not meet with him on August 25, as they had agreed; and

(b) [B] asked respondent whether the estate could be completed by mail, to which respondent replied that it could, and that he would transmit the requisite documents to [B] within a few days.

(15) On or about September 11, 1992, [B] called respondent and left a message requesting that respondent return his call.

(16) Respondent did not return [B's] call.

(17) On or about October 1, 1992, [B] telephoned respondent and left a message:

(a) Requesting that respondent return his call on the following day; and

(b) Stating that if respondent did not return his call, he would pursue a different means of obtaining a resolution of the estate matter.

(18) Respondent neither returned [B's] call, nor supplied him with the documents necessary to facilitate the completion of the estate administration.

(19) By letter sent via certified mail (return receipt requested), dated October 5, 1992, [B] informed respondent that since his informal attempts to have respondent conclude the estate administration had been unsuccessful, and since respondent had received all of the estate assets by late June 1992, that if respondent did not conclude the estate immediately, [B] would report the matter to the Disciplinary Board.

(20) Either respondent or his agent accepted delivery of the letter, but respondent did not reply to [B] in any manner.

(21) On April 3, 1989, respondent began holding funds in trust for the estate in his [C] Bank account numbered [    ], captioned "[respondent], Attorney at Law, trustee account."

(22) On or about January 31, 1990:

(a) Respondent was entrusted with a total of $75,623.58 on behalf of the estate; and

(b) The balance in respondent's trust account was $58,174.02.

(23) On March 9, 1990, respondent made advance distributions from his trust account to the six heirs (including [B]) in the amount of $9,000 each.

(a) After those disbursements were made, respondent was still entrusted with $22,561.08 on behalf of the estate;

418

(b) The last of the six checks cleared respondent's trust account on March 20, 1990; and

(c) By March 20, 1990, respondent's trust account balance had been reduced to $1,777.04.

(24) On or about August 14, 1991:

(a) Respondent was still entrusted with a total of $31,186.85 on behalf of the estate; and

(b) The balance in respondent's trust account was $1,616.34.

(25) On November 7, 1991, respondent negotiated an income check from [D] Management Inc. (formerly [ ] Associates), made payable to respondent as trustee for the estate.

(a) The check was dated November 1, 1991, and was drawn in the amount of $1,597.98;

(b) Respondent deposited $1,500 of the check proceeds into his [E] personal account numbered [ ], captioned "[respondent] or [respondent's wife];" and

(c) Respondent received $97.98 in cash from the check proceeds.

(26) On November 15, 1991, respondent deposited into his trust account a check drawn on his [F] Bank account, captioned "[respondent], Attorney at Law, general account," in the amount of $8,400.

(27) On February 12, 1992, respondent negotiated an income check from [D], made payable to respondent as trustee for the estate.

(a) The check was dated February 1, 1992, and was drawn in the amount of $1,597.98;

(b) Respondent deposited the proceeds of the check into his [E] account; and

(c) Respondent received $297.98 in cash from the check proceeds.

(28) On May 13, 1992, respondent negotiated an income check from [D], made payable to respondent as trustee for the estate.

(a) The check was dated May 1, 1992, and was drawn in the amount of $1,597.98; and

(b) Respondent deposited the proceeds of the check into his [E] account.

(29) On or about July 3, 1992:

(a) Respondent was still entrusted with a total of $49,632.44 on behalf of the estate; and

(b) The balance in respondent's trust account was $18,627.38.

(30) On or about July 30, 1993:

(a) Respondent was still entrusted with $49,632.44 on behalf of the estate; and

(b) The balance in respondent's trust account was $58.65.

(31) Respondent drew check no. 1267 (the date of which is illegible) from his trust account, made payable to himself in the amount of $2,000.

(a) This disbursement was not made for any purpose related to the estate;

(b) Respondent negotiated the check on August 3, 1993; and

(c) On that date, respondent's trust account balance stood at a negative figure of $1,941.35.

(32) The balance of funds entrusted to respondent on behalf of the estate was reduced, at various times during the period of entrustment, by disbursements which were unrelated to any estate purpose.

(33) From January 1990, through August 1993, with the exception of a few brief periods of time, respondent

was out of trust with regard to funds entrusted to him on behalf of the estate.

(34) On August 4, 1993, respondent deposited into his trust account a check drawn on the account of [ ] and [ ] [G] in the amount of $27,000.

(35) On August 8, 1993, respondent deposited into his trust account a check drawn on the [G's] account in the amount of $63,000.

(36) The money respondent received from the [G] was unrelated to the estate and was not an entrustment.

(37) On August 9, 1993, respondent issued a check from his trust account to each of the six heirs, each in the amount of $9,400.

(38) Respondent is still entrusted with approximately $500 on behalf of the estate.

(39) Respondent had not concluded the administration of the estate as of the date of hearing before the Hearing Committee.

(40) Respondent filed no answer to the petition for discipline.

(41) Respondent filed no exceptions to the Hearing Committee's report or a response brief to petitioner's brief on exceptions.

(42) A hearing scheduled for September 19, 1994, was continued at the request of respondent. At a pre-hearing conference on October 25, 1994, respondent assured the designated member of Hearing Committee [ ] that he would obtain counsel immediately, but proceeded pro se at the hearing on November 17, 1994.

(43) Respondent offered no exhibits or witnesses in his case in chief.

(44) The Hearing Committee then received evidence as to the type of discipline to be imposed, and it was found that there was prima facie evidence that respon-

dent has violated the Rules of Professional Conduct as alleged in the petition for discipline.

(45) Respondent offered no exhibits and no witnesses on the issue of discipline, other than his own testimony.

(46) Respondent requested and received a continuance for the purpose of obtaining counsel and an expert to assist him in an attempt to mitigate his admitted misconduct.

(47) A continuance was granted, and respondent failed to produce a report of an expert or request an extension of time in which to procure one. (N.T. I, 40-42; N.T. II, 3.)

(48) Respondent acknowledged that he was not asserting that his purported alcohol abuse played a causal role in his misconduct. (N.T. I, 42, 52.)

(49) There is no evidence of record that respondent abused alcohol during the time the misconduct occurred, or that alcohol was a causal factor in causing his misconduct.

(50) Respondent substantially completed reimbursement of the [B] estate in August 1993, approximately three and one-half years after he was first out of trust in regard to said estate. (N.T. I, 49-50.)

(51) Respondent served as a Hearing Committee member and chairperson prior to, and during, the time of his misconduct. (N.T. I, 48.)

### III. CONCLUSIONS OF LAW

Respondent, by his failure to act with reasonable diligence and promptness in representing [B], executor of the estate of [A], deceased, violated Rule of Professional Conduct 1.3.

Respondent, by his failure to keep [B], executor of the estate of [A], deceased, informed about the status

of the estate and administration, and failed to comply with [B's] reasonable request for information, violated Rule of Professional Conduct 1.4(a).

Respondent, by his failure to hold separate from his own property, funds with which he was entrusted, and which were the property of the estate of [A], deceased, violated Rule of Professional Conduct 1.15(a).

Respondent, by his unauthorized transfer and use of funds, which were the property of the estate of [A], deceased, violated Rule of Professional Conduct 8.4(c).

## IV. DISCUSSION

The board will first deal with the exceptions filed by petitioner in this matter.

Petitioner first argues that the Hearing Committee erred in failing to provide a discussion of the reasoning employed in making its recommendation for discipline. The board agrees that a discussion of the rationale for a committee's recommendation is important for review purposes. However, the record is absolutely devoid of any evidence that would mitigate the seriousness of the charges brought to this case, and it is doubtful that any rationale, based upon the record at hand, could have convinced this board that the sanction recommended was appropriate.

Petitioner next excepts to Hearing Committee's consideration of the respondent's unsubstantiated statements concerning his purported alcoholism. The test set forth by the Pennsylvania Supreme Court in *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989) established that psychiatric causal factors could mitigate a respondent's misconduct. In *Braun,* which involved the conversion of less than $2,000 by means of an attorney's forgery, the Supreme Court

stated, "In determining the appropriate sanction which should be imposed, the primary question is whether the record supports the finding that respondent's psychiatric condition . . . was a factor in causing his admitted egregious misconduct." *Id.* at 160, 553 A.2d at 895. There is absolutely no evidence of record that respondent abused alcohol during the time that his misconduct occurred or that alcohol was a factor in causing his misconduct. Further, the respondent acknowledged that he was not asserting that his purported alcohol abuse played a causal role in his misconduct. The Hearing Committee went to great pains in providing the respondent with the opportunity to obtain counsel and obtain such expert testimony. Respondent failed to do so. There is no evidence of mitigation as to the issue of alcohol abuse.

Petitioner next excepted to the Hearing Committee's findings in that they failed to consider aggravating circumstances of record. In this matter, during a period of January 1990, through August 1993, respondent was out of trust with regard to estate funds in an amount in excess of $49,000. Respondent stipulated that on three occasions he negotiated, either by deposit in whole or by split deposit into his personal account, without an authorization by the executor, three interest income checks he had received on behalf of the estate. He also stipulated that during the period of entrustment he made disbursements from his trust account which were unrelated to any estate purpose, and in order to make final disbursement to the legatees, he borrowed and deposited into his trust account sufficient amounts to fund legitimate disbursements. During this time period, specifically from July 10, 1985, through June 30, 1991, respondent served as a member of a Hearing Committee, and then chairperson of the committee from

July 1, 1989, through June 30, 1991, during a time period in which this serious misconduct occurred. The board does not accept, as a general proposition, that service as a Hearing Committee member or Hearing Committee chairperson is an aggravating factor. This does not detract from the egregious conduct of the respondent at a time that he was a Hearing Committee member and Hearing Committee chairperson.

Finally, petitioner excepts to the recommendation of the Hearing Committee as to the sanction to be imposed with a suspension of 60 days and a conditional reinstatement. Based upon the foregoing, the board agrees that the sanction recommended by the Hearing Committee is not appropriate. Petitioner refers to the case of *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987). In *Kanuck,* the attorney was charged with commingling and conversion. In that case, it was determined that the attorney had not intended to embezzle the client's funds, and had apparently "borrowed" the funds and made restitution in every case. A suspension of five years was imposed. However, in this case, the board must agree with petitioner that the amount of money involved in this case is substantial, and there is also clear evidence of respondent's conversion of the estate funds. This fact, in and of itself, is sufficient to warrant the sanction of disbarment.

Having fully considered the record, the board is satisfied that disbarment is the only appropriate remedy for respondent's egregious conduct, and the only method of protecting the public, the profession, and the courts.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent,

[    ], be disbarred. It is further recommended that the respondent be directed to pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g) Pa.R.D.E.

Board Member George recused himself.

Board Members Leonard, Lieber, Paris and Miller did not participate in the June 16, 1995 adjudication.

## ORDER

And now, April 26, 1996, upon consideration of the report and recommendations of the Disciplinary Board dated February 27, 1996, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Zappala, Castille and Nigro dissent and would suspend respondent for a period of five years.