**In re Anonymous No. 3 D.B. 90**

Disciplinary Board Docket No. 3 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GILARDI, *Member,* February 28, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent, [ ], Esq., was born in 1935 and admitted to the practice of law in the Commonwealth of Pennsylvania in 1962. His office is located at his residence which is [ ].

On January 17, 1990, Office of Disciplinary Counsel filed a petition for discipline charging the respondent with violating various Disciplinary Rules of the Code of Professional Responsibility in regard to respondent's handling of a bankruptcy matter for the time period between May 1985 through May 1988. The petition for discipline avers that respondent failed to hold inviolate $10,000 that he had received on behalf of the debtor in the bankruptcy action, and thereafter failed to account for the funds to the appointed trustee. As a result, a complaint to compel turnover of property was filed by the trustee against respondent. Subsequently, respondent was held in contempt of the U.S.

Bankruptcy Court for the [ ] District of Pennsylvania. In May 1988, respondent returned to the trustee the $10,000 and purged the contempt.

On February 7, 1990, petitioner and respondent entered into an extensive stipulation in which respondent admitted the underlying conduct. On April 27, 1990, respondent filed an answer to the petition for discipline and new matter, wherein he stated his position, that while he did not hold the funds inviolate, respondent believed at that time that he was entitled to retain the funds as a fee. Respondent, in answering further, stated that his failure to respond to both the trustee and Bankruptcy Court's demands for the return of the funds was a result of his admitted alcoholism.

On May 2, 1990, a hearing on the matter was held before Hearing Committee [ ] consisting of [ ]. At the hearing, the committee admitted into evidence the stipulation entered into by petitioner and respondent. The committee then proceeded to the dispositional stage of the hearing, pursuant to Disciplinary Board Rule §89.151. On May 31, 1990, the deposition of [A], M.D., was taken in regard to the issue of whether respondent's alcoholism was a causal factor in his misconduct. After the deposition was taken, the committee ordered the record closed.

In its brief to the Hearing Committee filed July 6, 1990, Office of Disciplinary Counsel recommended that respondent be suspended from the practice of law for two years, the suspension be stayed, and respondent be placed on probation for two years subject to conditions.

In respondent's brief to the Hearing Committee, respondent admitted violating all the Disciplinary Rules as charged in the petition for discipline with the exception of D.R. 1-102(A)(4)—which provides that a

lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Respondent also agreed to Office of Disciplinary Counsel's recommendation of discipline.

On September 24, 1990, the Hearing Committee filed its report in which the committee recommended the discipline proposed by Office of Disciplinary Counsel; that respondent be suspended from the practice of law for two years, the suspension be stayed, and respondent be placed on probation for two years subject to conditions. Neither the Office of Disciplinary Counsel nor respondent filed briefs excepting to the Hearing Committee's report and recommendation.

The matter was adjudicated by the Disciplinary Board at its January 4, 1991, meeting.

## FINDINGS OF FACT

The following findings of fact were stipulated by counsel:

(1) On April 29, 1983, respondent was retained to represent [B] Industries Inc., t/d/b/a/ [ ] (hereafter "debtor"), in regard to a bankruptcy proceeding. During his representation, respondent filed a voluntary Chapter 11 bankruptcy petition on behalf of his client.

(2) By order of the Bankruptcy Court dated December 17, 1984, part of the debtor's estate, a Pennsylvania liquor license (no. [ ]) was to be sold to [C] for a consideration of $15,000. Respondent retained [D], Esq., to assist him with the sale.

(3) On behalf of the debtor, respondent received, from attorney [D], a check dated May 21, 1985,payable to "[Respondent], Attorney for [B] Industries." The check was in the amount of $10,000 which represented

the proceeds from the sale of the liquor license minus $5,000 which attorney [D] had retained for his fee.

(4) On July 3, 1985, respondent endorsed the check, "For Deposit Only. [Respondent]" and deposited the check into his account held at [E] Bank, numbered [ ], and entitled "[Respondent], Attorney Escrow Account." Although the account was entitled an "escrow" account, respondent used this account as a personal account and not for segregated client funds. Respondent had sole signatory authority over this account.

(5) At the time respondent received these funds he should have known that the funds were part of the debtor's estate and, furthermore, as attorney for the debtor, respondent had an obligation to report these proceeds to the court and maintain these funds inviolate.

(6) After respondent deposited the $10,000 into his account, he immediately began to use the funds for his personal expenses. From July 5, 1985, the account balance was continually below the amount of $10,000. As of July 18, 1985, the account balance was $8.69.

(7) By order dated February 17, 1986, the bankruptcy proceeding was converted from a Chapter 11 to a Chapter 7 bankruptcy and [F], Esq., was appointed trustee.

(8) On February 6, 1987, a complaint to compel turnover of property, docketed at [ ] no. [ ] was filed by [G], Esq., on behalf of the trustee, as plaintiff, and against respondent, the named defendant. The complaint sought an order compelling respondent to "turn over the sum of $10,000 to the trustee," which amount represents the balance of the proceeds of the sale of the debtor's Pennsylvania liquor license.

(9) On February 12, 1987, a summons was issued in regard to this adversary action. Respondent was served a copy of the summons on about February 13,

1987, by first-class mail. In the summons, respondent was advised that he could elect to file a motion or an answer to the complaint by March 12, 1987, and that a hearing would be scheduled only if he answered the complaint.

(10) As a result of respondent's failure to plead or defend, a default judgment was entered against respondent on April 1, 1987. Respondent was ordered to turn over to the trustee the $10,000 he received on behalf of the debtor from the sale of the liquor license. By letter dated April 7, 1987, attorney [G] advised respondent of the default judgment and demanded respondent to remit the $10,000 to the trustee.

(11) Respondent failed to promptly comply with the default judgment; thus, on May 6, 1987, a rule to show cause was entered by Judge [H], U.S. Bankruptcy Court for the [ ] District of Pennsylvania. Respondent was ordered to show cause why he should not turn over the $10,000 to the trustee or to account for the disposition of funds. A hearing on the order to show cause was scheduled for May 27, 1987, of which respondent was properly notified.

(12) As a result of respondent's failure to appear at the May 27 hearing, on June 12, 1987, attorney [G] filed a motion for a certificate of contempt. A contempt hearing was scheduled for July 15, 1987.

(13) [I], Esq., acting on respondent's behalf, contacted attorney [G] and proposed a payment plan according to which respondent would satisfy the $10,000 judgment against him by making monthly payments in the amount of $500 and a final lump sum payment in January 1988. The hearing on the motion for a certificate of contempt, scheduled for July 15, 1987, was continued generally, contingent upon respondent's compliance with the payment plan.

(14) Respondent failed to honor the proposed payment plan. As a result, the hearing on the motion for a certificate of contempt was rescheduled for July 29, 1987, at 9:30 a.m. Respondent was served with a copy of a notice of the rescheduled hearing by first-class mail at his residence address.

(15) Respondent failed to appear at the July 29 hearing. As a result, on July 29, 1987, Judge [H] issued a certificate of contempt to the U.S. Bankruptcy Court for the [ ] District of Pennsylvania.

(16) In the interim, respondent filed a response, dated July 29, 1987, regarding the rescheduled hearing on the motion for a certificate of contempt. Therein, respondent stated that he did not receive a notice of the July 29 hearing until July 29 at approximately 10:30 a.m.; thus, he did not have adequate time to prepare and file a response. Respondent further stated that he wished to file a response and would want to reschedule the hearing on the motion for a certificate of contempt.

(17) Subsequently, the hearing on the motion for a certificate of contempt was rescheduled for October 14, 1987, and thereafter, continued until October 28, 1987. Respondent failed to appear at the October 28 hearing.

(18) On November 4, 1987, Judge [H] issued findings of fact, conclusions of law, and an order of contempt in regard to this matter, finding that respondent had committed civil and criminal contempt, the order being effective ten days after its issuance.

(19) By order dated November 24, 1987, respondent was held in contempt of the U.S. Bankruptcy Court for the [ ] District of Pennsylvania, and the U.S. Marshal was directed to bring respondent before the court

so that he would be given an opportunity to purge himself of the contempt.

(20) On April 8, 1988, respondent filed with the court his statement of explanation regarding the $10,000 proceeds that he received on behalf of the debtor. Respondent stated that he believed he had the right to retain the $10,000 as a fee earned. Respondent further stated that, although he failed to respond to the trustee, respondent was under a great deal of stress due to the fact he was suffering from a disease and because of "major financial setbacks." In the statement, respondent waived any and all claims to fees and reimbursements regarding his representation of the debtor. Respondent also included a consent, signed by the trustee acknowledging receipt of the $10,000 which respondent had remitted to the trustee on April 4, 1988. As a result, by order of court dated May 31, 1988, respondent was found to have "purged" himself of contempt.

The following findings of fact were determined by the Disciplinary Board after review of the record.

(21) Respondent was born on June 27, 1935. He earned his undergraduate degree from [ ] University in 1957, and in 1961, graduating third in his class, respondent obtained his juris doctor from [ ] University Law School.

(22) Respondent is a recovering alcoholic. He began drinking when he was a senior in high school at age 17 and has been using alcohol addictively for approximately 30 years. Respondent's addiction to alcohol had a negative impact on his life. Due to his excessive drinking, both of respondent's marriages ended in divorce, his relationship with his four children deteriorated, and many of his business relationships were severed. Respondent's alcoholism caused him

to resign from his position with the law firm [J] in 1968 and in 1973 his drinking became an issue causing him to resign from his position as solicitor in [ ] Township.

(23) By order dated July 2, 1975, the Supreme Court of Pennsylvania suspended respondent from the practice of law for a period of three months. However, respondent chose not to petition for reinstatement until 1982 at which time he was reinstated to the practice of law.

(24) Between 1975 and 1982, respondent was engaged in the coal business. Respondent, along with two other business associates, started a coal sales company under the name [K] Fuel. Over the years the business was quite successful, but in 1982, due to the shifting concentration of coal production amongst the larger producers, the business venture became economically unfeasible.

(25) During the period from 1977 until approximately 1983, respondent discontinued his use of alcohol. However, respondent's alcoholism was only in a state of remission. Although respondent attended a few Alcoholics Anonymous meetings in 1977 and 1978, he did not seek nor receive professional treatment. During this period of time, respondent was what is referred to as a "dry drunk" because at this time he did not accept the magnitude of his alcoholism.

(26) In early 1983, respondent read certain literature that led him to believe that, because of the period from which he had abstained from the use of alcohol, he could resume the use thereof as a "social drinker." This literature was based upon a study that allegedly had been conducted under the auspices of a major university, and respondent has learned subsequently that

the results of this study have been discredited. As a result, respondent resumed his use of alcohol.

(27) At the time that respondent engaged in this misconduct, from approximately May 1985 to May 1988, he was an alcoholic and had been an alcoholic for approximately 30 years.

(28) On February 29, 1988, the U.S. Marshals were at respondent's office to arrest him. Through the efforts of attorney [I], arrangements were made for respondent to present himself to Judge [H] upon the agreement that respondent would immediately seek treatment for his alcohol problem. On February 29, 1988, respondent, along with his associate, attorney [L], and attorney [I], informally met with Judge [H]. After this meeting, attorney [I] drove respondent to [M] Medical Center Emergency Room, where respondent was admitted through Dr. [N], a psychiatrist responsible for his care.

(29) After an initial period of evaluation, respondent was diagnosed as being a chemically dependent person and went through the detoxification program. Doctor [M] then advised respondent that he should enter the Adult Chemical Dependency Unit of the [M] Medical Center where he could receive treatment for his alcoholism.

(30) On March 4, 1988, respondent transferred himself to the Adult Chemical Dependency Unit of [M] Medical Center where he was again evaluated and diagnosed as a chemically dependent person. [O], a certified addiction therapist was assigned to respondent.

(31) At the Adult Chemical Dependency Unit, respondent received in-patient treatment for a period of 17 days which ended March 21, 1990. Thereafter, respondent received out-patient treatment for a period of five weeks, which entailed returning to the Adult Chemical Dependency Unit three times a week for ap-

proximately three hours per visit. At the conclusion of his out-patient treatment, respondent participated in a ten-week after-care program which entailed returning to the Adult Chemical Dependency Unit once a week for a one and one-half hour visit.

(32) Respondent successfully completed his treatment program at [M] Adult Chemical Dependency Unit. In addition, respondent attended 90 meetings of Alcoholics Anonymous during the first 90 days after his release from in-patient status. As part of his continuing program of recovery from his alcohol dependency, respondent is now actively participating in the program of recovery offered by Alcoholics Anonymous by participating in the meetings and activities of two groups which respondent has selected as his "home groups" acting as chairperson at meetings of his home groups; and giving leads at meetings. Respondent has also been assigned an Alcoholics Anonymous sponsor, [P], with whom respondent communicates regularly.

(33) As part of the Chemical Dependency Unit's alumni speaker program, respondent returns to [M] Medical Center to speak to those persons currently undergoing in-patient treatment. At the request of the staff, respondent speaks on a one-on-one basis to members of the legal profession who are undergoing treatment in the unit. Respondent also talks to those persons currently being treated in the detoxification unit about the benefits of the rehabilitation program.

(34) At the time respondent was discharged as an in-patient from [M] Medical Center, he had no place to live and no source of income other than legal fees owed to him from matters he had already commenced working on prior to his admission to [M]. With the help of [I] and a monetary grant from the [ ] County Bar Association, respondent has been able to re-establish

himself in the practice of law with a small legal practice. Respondent is now able to support himself and contribute to the support and college education of his youngest child.

(35) Since his resumption of the practice of law upon his discharge from [M] Medical Center, the Disciplinary Board has received no complaints of professional misconduct concerning respondent.

(36) Since February 29, 1988, respondent has not used alcohol or any other mind-altering or mood-altering chemical.

(37) On March 5, 1988, upon being admitted to the [M] Adult Chemical Dependency Unit, respondent was interviewed by Dr. [A], a psychiatrist with sub-specialities in addiction and alcoholism. At the time respondent received treatment at [M], Dr. [A] was the medical director of the detoxification unit at [M] Medical Center and the medical director of the Adult Drug and Alcohol Rehabilitation Center. Dr. [A] testified that respondent was an alcoholic and his misconduct was caused by his alcoholism. Testifying further, Dr. [A] stated that alcoholics in the late stages of their addiction [as was respondent] demonstrate very impaired judgment and often do things they would not normally do.

(38) [O], a certified addiction therapist, was respondent's primary therapist at the time respondent was admitted to the Adult Chemical Dependency Unit at [M]. [O] testified that respondent was an alcoholic and respondent's misconduct was caused by his alcoholism.

(39) Both Dr. [A] and [O] testified that as long as respondent continues in his participation of the Alcoholics Anonymous program, respondent's prognosis for staying sober is excellent.

## DISCUSSION

The issue before the Disciplinary Board is two-fold: (1) Whether respondent's misconduct constitutes a violation of the Disciplinary Rules of the Code of Professional Responsibility as charged in the petition for discipline; and (2) The determination of the appropriate discipline to be imposed. The Hearing Committee adopted the recommendation of Office of Disciplinary Counsel that respondent be suspended from the practice of law for a period of two years, the suspension be stayed in its entirety and the respondent be placed on probation for a period of two years. Respondent did not file exception to the Hearing Committee report.

### A. *Respondent's Misconduct*

The record indicates that respondent was retained to represent [B] Industries Inc. (debtor) in regard to a bankruptcy proceeding. During his representation, respondent received on behalf of the debtor, $10,000 which represented the proceeds from the sale of debtor's liquor license. Respondent believed that he was entitled to the $10,000 as a fee for the substantial amount of work he had already completed on behalf of his client. This belief was based upon the statement of an experienced bankruptcy lawyer. Thus, respondent deposited the $10,000 into his account and utilized the funds for his own personal expenses. Although the account respondent deposited the funds was entitled "escrow account," the account in essence was not utilized for client funds, but rather used by respondent as a personal account. At no time were client funds deposited into this account. Thereafter, the trustee filed an adversary action against respondent to compel respondent to turn over the $10,000. As a result of re-

spondent ignoring all subsequent court orders, respondent was held in contempt by Judge [H] of the U.S. Bankruptcy Court for the [   ] District of Pennsylvania. By order of court dated May 31, 1988, respondent was found to have purged himself of contempt after remitting to the trustee the proceeds of the sale of debtor's liquor license in the amount of $10,000.

The board finds that respondent's conduct as outlined above constitutes a violation of D.R. 1-102(A)(6)—which prohibits conduct that adversely reflects on a lawyer's fitness to practice law. By failing to account to the trustee in bankruptcy and failing to respond to the orders of the court which led to his being held in contempt of the U.S. Bankruptcy Court for the [   ] District of Pennsylvania, respondent violated D.R. 1-102(A)(5)—which prohibits engaging in conduct that is prejudicial to the administration of justice.

The board also has determined that respondent's conduct did not constitute a violation of D.R. 1-102(A)(4)—which prohibits engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. There is no evidence suggesting that respondent deceived or intended to deceive anyone with respect to his handling of the $10,000. Respondent believed that he was entitled to the $10,000 as a fee for the substantial amount of work he had already completed on behalf of the debtor. Furthermore, attorney [D], an experienced bankruptcy attorney, who respondent retained to assist him with the sale of debtor's liquor license, retained $5,000 from the proceeds of the liquor license sale as his fee and advised respondent that respondent was also entitled to a fee. There is no evidence that respondent neglected the debtor's legal matter. On the contrary, the record indicates that respondent completed a substantial amount of work on behalf of his client

for which he did not receive a fee. Thus, respondent did not violate D.R. 6-101(A)(3). The record also reveals that respondent did not commingle funds in violation of D.R. 9-102(A). Although the account in which respondent deposited the $10,000 was entitled "escrow account," it was not in fact an escrow account. Respondent used the account as a personal business account and at no time utilized this account for client funds. At the time respondent deposited the funds of the debtor, he believed it was a legitimate fee for which he was entitled. Finally, respondent's conduct did not violate D.R. 9-102(A)(2)—which requires that funds which are in dispute shall not be withdrawn as a fee, until the dispute is finally resolved. On June 18, 1985, the time respondent withdrew the funds which he believed to be a legitimate fee, the funds were not in dispute. It was not until eight months later, on February 17, 1986, the date on which the bankruptcy was converted to Chapter 7, that the funds were placed in dispute.

## B. *Mitigation*

Although respondent's conduct is serious, significant mitigating circumstances exist in this case. At the time respondent engaged in this misconduct, approximately from May 1985 through May 1988, he was an active alcoholic and had been an alcoholic for 30 years. In order for respondent's alcoholism to be considered as a mitigating factor, such that probation would be warranted, respondent must prove by clear and convincing evidence that the alcohol abuse was a causal factor in his misconduct. *Office of Disciplinary Counsel v. Braun*, 520 Pa. 157, 553 A.2d 894, 895-896 (1989); Disciplinary Board Rules §89.293. At the hearing, respondent presented the expert testimony of [A], a psychiatrist who treated respondent at the [M] Medical

Center, and [O], a certified addiction therapist who was respondent's primary therapist at the time respondent was admitted to the Adult Chemical Dependency Unit at [M]. Both Dr. [A] and [O] testified that respondent was an alcoholic and his misconduct clearly was caused by his alcoholism. In light of this expert testimony, coupled with respondent's own testimony, the board finds that respondent's alcoholism was a factor in causing his misconduct. Thus, respondent has met the *Braun* test and the board will consider in mitigation, respondent's alcoholism.

In considering the mitigating factor of respondent's alcoholism, the board has determined that respondent's conduct does not warrant disbarment. The board has determined that respondent is not guilty of commingling of funds. Although erroneous, respondent believed that he was entitled to the $10,000 as a fee. Respondent formed this belief in reliance on information he received from an experienced practitioner in the bankruptcy field. Respondent then deposited this amount into an account that he used as a general business account and not for escrowed funds. Respondent's failure to account to the trustee and being found in contempt were a direct result of his alcoholism.

The record strongly indicates that respondent's alcoholism is under control. Since February 29, 1988, respondent has abstained from alcohol. Respondent has successfully completed the extensive treatment program at [M] Adult Chemical Dependency Unit and is actively participating in the recovery program offered by Alcoholics Anonymous. In the words of both Dr. [A] and [O], respondent's prognosis for staying sober is excellent.

Respondent has also demonstrated that he can engage in the practice of law without causing the courts or

the profession to fall into disrepute. Since his release from [M] Medical Center and his subsequent rehabilitation, respondent has re-established himself in the practice of law with a small legal practice. Respondent's practice of law can be sufficiently monitored by [I]. It is unlikely that respondent's practice of law will bring harm to the public. Respondent is completely aware of the harmful effects of his alcoholism and has taken every step to rebuild his life. Respondent is remorseful for his misconduct and has made amends by returning the $10,000 and by waiving any right that he had for a fee. Furthermore, Office of Disciplinary Counsel has stated on the record that since respondent's rehabilitation, there have been no complaints filed against respondent for misconduct.

Both Office of Disciplinary Counsel and the Hearing Committee recommended probation as the appropriate discipline.

After complete review of the record, the board believes that respondent is an appropriate candidate for probation. It is clear that respondent will benefit from continued counseling.

## CONCLUSIONS OF LAW

The board determined that respondent's conduct constituted a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(5)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

(b) D.R. 1-102(A)(6)—A lawyer shall not engage in conduct that adversely reflects on his fitness to practice law.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that [respondent] be suspended from the practice of law for a period of two years, that the suspension be stayed in its entirety, and that the respondent be placed on probation for a period of two years subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor, [P];

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule §89.293(c);

(5) Respondent shall provide written verification, on a form provided by the board, to his sobriety monitor of regular weekly attendance at an Alcoholics Anonymous meeting;

(6) The respondent shall cooperate fully with his sobriety monitor;

(7) The sobriety monitor shall:

(a) monitor the compliance by the respondent-attorney with the terms and conditions of the order imposing probation;

(b) assist the respondent-attorney in arranging any necessary professional or substance abuse treatment;

(c) meet with the respondent-attorney at least twice a month, and maintain weekly telephone contact with the respondent-attorney;

(d) maintain direct contact with the Alcoholics Anonymous or Narcotics Anonymous sponsor of the respon-

dent-attorney if the respondent-attorney participates in either of those programs;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent-attorney of the terms and conditions of the probation.

(8) Attorney [I] is hereby appointed as respondent's practice monitor. [I] will meet with respondent on a monthly basis to review respondent's workload and trust account; and

(9) [I] shall file with the secretary of the board quarterly written reports on a form to be provided by the board.

The board further recommends that respondent be ordered to pay the expenses of investigating and prosecuting this matter pursuant to Rule 208(g)(1), Pa.R.D.E.

Messrs. Brown and Hill did not participate in the adjudication.

## ORDER

And now, February 28, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated June 11, 1991, it is hereby ordered that [respondent] be suspended from the bar of this Commonwealth for a period of two years, that the suspension be stayed in its entirety, and that the respondent be placed on probation for a period of two years subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3)   Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor, [P];

(4)   A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule §89.293(c);

(5)   Respondent shall provide written verification, on a form provided by the board, to his sobriety monitor of regular weekly attendance at an Alcoholics Anonymous meeting;

(6)   The respondent shall cooperate fully with his sobriety monitor;

(7)   The sobriety monitor shall:

(a)   monitor the compliance by the respondent-attorney with the terms and conditions of the order imposing probation;

(b)   assist the respondent-attorney in arranging any necessary professional or substance abuse treatment;

(c)   meet with the respondent-attorney at least twice a month and maintain weekly telephone contact with the respondent-attorney;

(d)   maintain direct contact with the Alcoholics Anonymous sponsor of the respondent-attorney;

(e)   file with the secretary of the board quarterly written reports; and

(f)   immediately report to the secretary of the board any violations by the respondent-attorney of the terms and conditions of the probation.

(8)   Attorney [I] is hereby appointed as respondent's practice monitor.   [I] will meet with respondent on a monthly basis to review respondent's work load and trust account; and

(9)   [I] shall file with the secretary of the board quarterly written reports on a form to be provided by the board.

490

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen did not participate in this matter.