**In re Anonymous No. 50 D.B. 92**

Disciplinary Board Docket no. 50 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* April 11, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 14, 1992, respondent's counsel filed with the Supreme Court a petition to suspend an attorney jointly executed by counsel for respondent and counsel for petitioner.

On June 3, 1992, the Supreme Court entered an order placing respondent on temporary suspension, pursuant to Rule 208(f), Pa.R.D.E.

On February 17, 1994, Office of Disciplinary Counsel filed a petition for discipline. An answer to the petition was filed on May 6, 1994.

On April 12, 1994, the matter was referred to Hearing Committee [    ], consisting of [    ], Esquire, Chairperson, [    ], Esquire and [    ], Esquire, members.

A disciplinary hearing on the matter was held June 7, 1994.

Petitioner filed a letter-brief to the Hearing Committee on July 6, 1994. Respondent filed a brief to the Hearing Committee on August 4, 1994.

On October 12, 1994, the Hearing Committee filed its report, which recommended that respondent be suspended from the practice of law for a period of five years retroactive to July 3, 1992 with three years to be served, two years of the suspension to be stayed, and respondent be placed on probation for a period of three years. No exceptions were filed by either respondent or petitioner.

The matter was adjudicated at the December 16, 1994 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E., with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [     ], was born on February 3, 1942 and was admitted to practice law in the Commonwealth of Pennsylvania on November 18, 1970. His attorney registration number is [     ], and he is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court. (Exh. P-1 and P-2.)

(3) By order of the Supreme Court of Pennsylvania dated June 3, 1992, the respondent was suspended from the practice of law in this Commonwealth under the provisions of 208(f), Pa.R.D.E., upon the petition to

suspend an attorney jointly filed with the Supreme Court by counsel for respondent and counsel for petitioner. (Exh. P-1 and P-2.)

(4) Until shortly before his suspension, respondent maintained an office for the practice of law at [    ]. He resides at [    ]. (Exh. P-1 and P-2.)

(5) The circumstances underlying the instant petition for discipline against respondent include the following:

(a) On November 10, 1990, [A] died intestate;

(b) The respondent advised and assisted [B], the [    ] County [    ] in obtaining letters of administration appointing [B] administrator of the [A] estate on November 27, 1990;

(c) In his capacity as administrator, [B] opened an estate account at the [C] Bank in [    ] on December 7, 1990, wherein he deposited funds of the estate and made disbursements to himself and respondent;

(d) In his capacity as attorney for the administrator, respondent received estate funds which he deposited to his trust account no. [    ] at [D] Bank [    ] from which he made disbursements to himself and [B];

(e) Between December 11, 1990 and July 30, 1991, the respondent received disbursements of about $84,743.36 from the [A] estate which was converted for his own purpose;

(f) On March 23, 1992, the Honorable [E], Judge of the Orphans' Court of [    ] County, issued an order appointing [F], Esquire, as master/auditor to conduct an investigation and hearings into the administration of the [A] estate;

(g) On or about March 27, 1992, [B] and respondent renounced their respective positions as administrator and attorney for the estate and [G] became administrator and [H], Esquire, became the estate's attorney;

(h) On March 27, 1992, respondent delivered a check to [G], in the amount of $171,936.66 purportedly representing the return of attorney's fees and administrator's commissions of $9,653.36 each ($19,306.72 total), principal of $146,600.94 and interest of $6,029;

(i) On or about May 15, 1992, the County Investigating Grand Jury [    ] of [    ] County issued a presentment, docketed to no. [    ], investigating no. [    ], wherein it recommended, inter alia, that charges of theft and criminal conspiracy be brought against [B] (the [    ] of [    ] County) and respondent ([    ]) relative to their (alleged) misappropriation and conversion of in excess of $145,000 from the estate of [A], orphans' court no. [    ]. By order dated May 15, 1992, the Honorable [I], Supervising Judge, accepted the presentment and directed the district attorney to so charge and prosecute [B] and respondent;

(j) On May 16, 1992, troopers of the Pennsylvania State Police filed criminal complaints with a specially assigned district justice charging the respondent and [B] with theft by failure to make required disposition of funds received (18 Pa.C.S. §3927(a)) and criminal conspiracy (to commit theft) (18 Pa.C.S. §903(a)(1));

(k) On July 8, 1992, the District Attorney of [    ] County filed information against respondent and [B] charging them with theft by failure to make required disposition of funds received and criminal conspiracy. Specifically as to respondent, the information charged theft of in excess of $60,000 from the estate of [A] in respondent's capacity as attorney for the administrator, and conspiring with [B], the administrator, to convert in excess of $140,000 from the estate between the dates of November 10, 1990 and September 11, 1991;

(l) On November 30, 1992, the respondent and [B] pleaded guilty to the criminal charges filed against them before the Honorable [J], specially presiding; and

(m) On March 29, 1993, Judge [J] imposed sentences upon both respondent and [B]. On the counts of theft, the respondent and [B] were sentenced to pay the costs of prosecution within six months, to pay fines of $3,000 within 12 months and placed on probation for periods of four years upon conditions they perform 100 hours of community service and pay probation supervision fees of $1,000 at the rate ˜of $200 per year for five years. On the criminal conspiracy counts, respondent and [B] were placed on probation for consecutive periods of one year. Respondent was also directed to obtain counseling for drug and gambling problems. (Exh. P-1 and P-2.)

(6) Respondent began drinking after high school graduation (N.T. 131) and continued to drink through college, law school and after commencement of his professional career as an attorney. Respondent drank for over 30 years on a pretty regular basis. (N.T. 131.)

(7) Respondent experienced progressively worsening symptoms of alcoholism which interfered in his educational progress, personal affairs as well as his professional responsibilities. (N.T. 131-37.)

(8) In the late 1980s and early 1990s, respondent's drinking escalated such that it was necessary for respondent to regularly have several drinks in the morning to stop his shakes. (N.T. 138-39.)

(9) Prior to entering rehabilitation for his alcohol addiction, respondent was consuming approximately one quart of alcohol daily. (N.T. 142.)

(10) Respondent developed a fascination for gambling as a young child when he would visit the racetrack

with his father. (N.T. 125.) Respondent began gambling as a child of 8 or 9 and continued betting on the horses through law school. (N.T. 125-26.)

(11) Respondent successfully gave up gambling from 1968 through approximately 1979-1980. (N.T. 126.)

(12) Commencing in 1979-1980, and for the next 10 to 12 years, respondent began gambling six nights a week for the most part at the [     ] racetrack in [     ]. (N.T. 126.)

(13) Respondent began scheduling his family vacations around the location of a racetrack. (N.T. 126-27.)

(14) Respondent would bet money he could not afford to lose and sometimes would lose thousands of dollars in one evening. (N.T. 128.)

(15) In the late 1980s and early 1990s, respondent was involved in racetrack betting as well as sorts of other gambling including casinos, sports betting with bookies and cards. (N.T. 130.)

(16) The respondent developed an obsessive quest to gamble and had no control to stop. (N.T. 103, 141, 149.)

(17) Respondent was diagnosed medically as both a pathological gambler, and also an alcohol-dependent person. (N.T. 98, exh. R-1 and R-2.)

(18) During the time of the respondent's criminal conduct, there was a direct and substantial causal relationship between respondent's alcohol and gambling addiction and the theft of the money from the [A] estate. (N.T. 102-104, 139-42.)

(19) Respondent has not had a drink for over two years. (N.T. 32, 147.)

(20) Respondent has not gambled for over two years. (N.T. 147.)

(21) On March 30, 1992, respondent sought in-patient treatment for his alcoholism and gambling addiction at [K] in [    ], Pennsylvania. He was discharged on April 29, 1992, after four weeks of in-patient treatment at the facility. (Exh. R-1 and R-2.)

(22) Since April of 1992, respondent has attended Alcoholics Anonymous meetings on nearly a daily basis, (N.T. 33, 146) and is currently a sponsor to another recovering alcoholic. (N.T. 148.)

(23) From May of 1992 through November 1992, respondent sought treatment from [L], M.D. on a bi-weekly basis for his alcohol and gambling addictions. (N.T. 145, exh. R-2.)

(24) Since April of 1992, respondent has attended Gamblers Anonymous meetings on a weekly basis. (N.T. 34, 148.)

(25) Respondent is actively pursuing effective and continual rehabilitation efforts for his alcohol and gambling addictions. (N.T. 90-94, 104-105, 146-48.)

(26) For the past 12 to 15 months, respondent has worked as a law clerk at the firm of [M] performing legal research and legal writing. (N.T. 8-9.)

(27) Based upon the demeanor of the witnesses, their qualifications and background, as well as the quality and scope of their testimony, the witnesses presented on behalf of respondent are found to be credible.

(28) The evidence presented by the respondent establishes that the community at large and the legal community would be supportive to the respondent's return to the practice of law. (N.T. 10-11, 25, 29, 39-40, 42-43, 47-48, 56-57, 70-71, 82-83.)

(29) Respondent exhibited remorse for his misconduct. (N.T. 139, 151-52.) Respondent cooperated fully in the criminal investigation (N.T. 144) and admitted

14

each violation of his professional misconduct. (Exh. P-1 and P-2.)

(30) Respondent has successfully completed the community service assigned as part of his criminal sentence (N.T. 82, 153) and is currently making payments on his criminal fines. (N.T. 152.)

(31) There is no evidence of any other acts of misconduct on behalf of respondent. (N.T. 149, 151, 155.)

## III. CONCLUSIONS OF LAW

The board finds that respondent's conduct violated the following Rules of Professional Conduct:

(a) R.P.C. 1.2(d)—(Which states that a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent);

(b) R.P.C. 1.16(a)(1)—(Which states that a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or other law);

(c) R.P.C. 8.4(a)—(Which states that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another);

(d) R.P.C. 8.4(b)—(Which states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects);

(e) R.P.C. 8.4(c)—(Which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation);

(f) R.P.C. 8.4(d)—(Which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

The board also finds that respondent's conviction constitutes an independent basis for discipline in accordance with Rule 203(b)(1), Pa.R.D.E.

## IV. DISCUSSION

The misconduct in this case is very serious and has been admitted by the respondent. See petitioner's exhibits 1 and 2. The respondent, while acting as attorney for an estate, conspired with the administrator to remove over $160,000 from the estate's assets. (Interim report of master/auditor, exh. P-1, sub-exh. G at 17.) Respondent has taken full responsibility for his role in the theft, having pleaded guilty to the criminal charges against him after having gone to the district attorney and the grand jury. (N.T. 144.) Respondent also admitted his responsibility during the disciplinary hearing. (N.T. 139.)

Despite the clear nature of the violations and the seriousness of respondent's wrongdoing, respondent presented compelling evidence in mitigation. Respondent presented both lay and expert testimony, as well as his own account, to substantiate the existence of a dual psychological condition consisting of a pathological compulsive gambling disorder and a serious alcoholic condition. Both of these conditions have been of longstanding duration and have had severe effects on respondent's life in addition to his misconduct. This evidence is both substantial and uncontradicted. Therefore, the major task before the board in making a recommendation for discipline is deciding what effect this evidence in mitigation should have.

The leading case in Pennsylvania concerning the appropriate disciplinary response to misconduct performed by impaired attorneys is *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). The *Braun* case involved conversion of client funds from an estate, and the forging of the executrix' signature on the checks used to withdraw the money from the estate account. The respondent in *Braun* was examined by two psychiatrists, one selected by the Office of Disciplinary Counsel, and one retained by the respondent himself. The Hearing Committee found no causal connection between respondent's psychiatric condition (neurotic depression) and his misconduct. The Disciplinary Board, however, did find such a causal connection, based in large measure on the testimony of the respondent's psychiatrist. Both bodies recommended a two-year suspension. *Id.* at 159-60, 553 A.2d at 895.

The Pennsylvania Supreme Court, in reviewing the record and recommendations before it also found a causal connection between the respondent's psychiatric disability and his misconduct. The Supreme Court went on to hold that, "[p]sychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding, and in this case, the psychiatric disorder persuades us to impose a sanction less severe than disbarment." The Supreme Court then imposed a two-year suspension. *Braun, supra* at 161, 553 A.2d at 895-96.

Subsequent Disciplinary Board proceedings emphasize, however, that a causal connection between the attorney's condition and the misconduct must be proven, not merely assumed. Illustrative of this emphasis is *In re Anonymous Nos. 101 D.B. 88 and 17 D.B. 89,* 10 D.&C.4th 599 (1990). The report in the cited case outlined multiple instances of serious misconduct which occurred during a period in which the respondent-at-

torney had been addicted to cocaine. The respondent sought to establish the causal connection between his addiction and the misconduct through the testimony of a rehabilitation counselor who was also his fiancee. Both the Hearing Committee and the Disciplinary Board found this testimony unpersuasive on the point of causation and recommended disbarment. The Supreme Court ultimately disbarred the respondent-attorney.

The *Braun* analysis is useful for examining the present case. While the misconduct which respondent admits is very serious, involving as it does a conspiracy to convert funds from an estate, and the actual conversion of a large sum from that estate, respondent in this case has established the connection between his gambling addiction, alcoholism and his misconduct. In particular, he presented the testimony of [N], D.O., a specialist in addiction medicine who treated respondent. (N.T. 96-113.) Dr. [N] clearly testified that he diagnosed respondent as suffering from both pathological gambling and alcohol dependency, based on the standards set forth in the American Psychological Association's *Diagnostic and Statistical Manual,* third edition, revised (DSM III-R). (N.T. 98.) Prior cases have firmly established that alcoholism can be a mitigating factor in Pennsylvania disciplinary proceedings. *In re Anonymous No. 3 D.B. 90,* 14 D.&C.4th 470 (1992); *In re Anonymous No. 101 D.B. 90,* 18 D.&C.4th 11 (1992).

In addition, the uncontradicted testimony showed respondent to suffer from a compulsive pathological gambling disorder. (N.T. 100-102.) Respondent testified that he used the money which he wrongfully took from the estate for gambling. (N.T. 149.) Dr. [N] testified that the gambling disorder, coupled with the alcoholism, was a causative factor in respondent's misconduct. (N.T. 103.) A compulsive pathological disorder is recognized

as a mitigating factor in Pennsylvania disciplinary proceedings, leading to a determination that probation is a proper sanction in a case where a respondent has shown the capacity for rehabilitation and has taken responsibility for the underlying misconduct. *In re Anonymous No. 12 D.B. 89,* 10 D.&C.4th 627 (1990).

Here the respondent has carried this burden. He has shown his capacity for rehabilitation through the testimony of a number of witnesses. Attorney [O] testified to respondent's commitment in the Alcoholics Anonymous program through his own observation, because he often attends meetings with respondent. (N.T. 91-93.) In addition, [O] is aware of respondent's involvement with the Gamblers Anonymous program. (N.T. 92.) Respondent's participation in Alcoholics Anonymous was corroborated by Attorney [H]. (N.T. 32-33.) Also impressive was the testimony of Sister [P], who testified that respondent contributed a great deal more to the [   ] mission she runs than the required 100 hours of community service called for by respondent's criminal sentence. (N.T. 81-84.)

Respondent also showed his capacity for rehabilitation by the testimony of attorneys currently familiar with him. In particular, the testimony of [Q], Esquire, respondent's current employer, showed that respondent has reacquired steady work habits and that respondent can make a valuable contribution to the bar. (N.T. 9-11.) This testimony was bolstered by that of other attorneys as well; Attorneys [O] and [H], as discussed above, [R], Esquire, (N.T. 40), [S], Esquire, (N.T. 58, 64) and [T], Esquire. (N.T. 70.)

Respondent also presented evidence showing that his resumption of practice would not harm the image of the bar. (N.T. 10-11, 25, 29, 39-40, 42-43, 47-48, 56-57, 70-71, 82-83.) While this type of evidence is more

usually considered in a reinstatement hearing, see *e.g.,* *In re Anonymous Nos. 8 and 84 D.B. 87,* 19 D.&C.4th 178, 182 (1993), this evidence is also properly considered where part of the recommendation may be probation.

The overwhelmingly positive testimony concerning respondent's conduct and character as a result of his continuing rehabilitation, as well as the convincing nature of the objective evidence of that rehabilitation, led the board to conclude that this case is appropriate for a recommendation of a partially stayed suspension and probation.

If the intent and spirit of the *Braun* holding has any vitality, this case is its test. With that in mind, our recommendation is made without dissent and with confidence.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended from the practice of law for a period of five years, retroactive to July 3, 1992, with three years served and two years stayed, and be placed on probation for two years, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor for respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, outpatient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by the respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Member Powell abstained.

Board Member Kerns did not participate in the adjudication.

## ORDER

And now, May 3, 1995, upon consideration of the report and recommendations of the Disciplinary Board dated April 11, 1995, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of five years, retroactive to July 3, 1992, with three years served and two years stayed, and be placed on probation for two years, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by the respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Chief Justice Nix did not participate in this matter.

Mr. Justice Montemuro is sitting by designation.