# In re Anonymous No. 56 D.B. 93

Disciplinary Board Docket no. 56 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PARIS, *Member,* May 8, 1996—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 24, 1993, the Supreme Court of Pennsylvania issued a rule upon respondent to show cause why he should not be placed on temporary suspension pursuant to Rule 208(f), Pa.R.D.E. Respondent was directed to file a response within 10 days of the date of the order. Respondent did not file a response. On June 30, 1993, respondent was placed on temporary suspension by order of the Supreme Court of Pennsylvania. A petition for discipline was filed by petitioner on January 5, 1994. Respondent did not file an answer. A hearing on this matter was held on March 7, 1995, before Hearing Committee [    ] comprised of Chairperson [    ], Esquire, and Members [    ], Esquire, and [    ], Esquire. Respondent was represented by [    ], Esquire. Petitioner was represented by [    ], Esquire. The committee filed its report on October 6, 1995 and recommended a 10-month suspension followed by a one-year probation. Petitioner filed a brief on exceptions on November 30, 1995. Respondent filed a brief opposing exceptions on January 23, 1996.

This matter was adjudicated by the board at the meeting of March 7, 1996.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on or about November 19, 1962. His last registered office address was [    ]. His last registered residence address is [    ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent is currently suspended from the practice of law in Pennsylvania by order of the Supreme Court of Pennsylvania dated June 30, 1993, pursuant to Enforcement Rule 208(f).

(4) Respondent was counsel for [A]. [B] was a client of [A].

(5) Respondent did not maintain in his office any original copies of contracts involving [B]. Files of documents concerning [B] were placed in a storage facility rented by respondent.

(6) [B] requested copies of said contracts from respondent.

(7) One of the requests for copies of the contracts was sent to respondent by Western Mailgram.

(8) Respondent did not respond to [B's] requests for copies of the aforementioned contracts.

(9) [B] retained subsequent counsel, [C], Esquire, of the law firm of [D].

(10) By letter dated September 28, 1992, [C] wrote to [B] setting forth that he had:

(a) sought repeatedly to contact [respondent];

(b) called [respondent's] office more than 10 times and left numerous messages;

(c) sought [B's] documents from respondent; and

(d) not been contacted by [respondent] or anyone from his law firm.

(11) Respondent contacted [C] and explained that he was not working due to illness. Respondent told [C] that he hoped to return to work sometime in 1993 and would attempt to retrieve the copies from storage subsequent to his return. Respondent did not subsequently contact [C].

(12) Prior to August 1987, [E] was involved in an accident from which she sustained injuries. That accident involved [F].

(13) Subsequent to the accident, [E] retained respondent's offices to represent her for injuries sustained as a result of that accident.

(14) Respondent assigned associate [G], Esquire, to be the attorney responsible for the filing of a lawsuit, under the supervision of respondent.

(15) On August 7, 1987, [G], at respondent's direction, filed a complaint in [    ] Court of Common Pleas entitled *[E] v. [F],* August term, 1987, no. [    ] in which respondent's office represented plaintiff, [E].

(16) By letter dated August 10, 1992, [E] sent respondent a notice of discharge, as well as [E's] request that respondent send her file to [H], Esquire.

(17) Respondent did not respond to that letter.

(18) On September 15, 1992 [H], Esquire, wrote to respondent asking that respondent reply to [E's] prior correspondence of August 10, 1992 and that respondent provide him with [E's] file.

(19) Respondent did not respond to that letter.

(20) On October 12, 1992 [H], Esquire, again wrote to respondent asking him to respond to [E's] prior correspondence and that he provide him with [E's] file.

(21) Respondent did not respond.

(22) On November 2, 1992 [H], Esquire, once again wrote to respondent and requested receipt of [E's] file.

(23) Respondent did not contact [E] or [H] in response to that letter, nor has he since contacted them.

(24) On or about January 31, 1987, [   ] and [   ] [I] were involved in a car accident at [   ], [   ], Pennsylvania.

(25) Subsequent to this accident both Mr. & Mrs. [I] retained respondent for representation for injuries sustained as a result of that car accident.

(26) Respondent successfully represented both Mr. & Mrs. [I], and in or around August 1991, respondent negotiated a settlement on behalf of both Mr. & Mrs. [I] with the defendant's insurance carrier, [J] Insurance Company.

(27) Mr. [I] subsequently died from causes unrelated to the accident.

(28) Mrs. [I] was declared administratrix of the estate of [Mr. I].

(29) Subsequent to the negotiated settlement, respondent's firm received from [J] Insurance Company two checks in full satisfaction of the [I] claim.

(30) Those checks were:

(a) no. 113089434 dated July 8, 1991 payable to [Mrs. I] and her attorney [respondent] in the amount of $15,000;

(b) no. 113089436 dated July 8, 1991 payable to [Mrs. I] as administratrix of the estate of [Mr. I], deceased and [respondent], her attorney, in the amount of $15,000.

(31) Both checks were stamped endorsed by respondent or someone on his behalf, and by [Mrs. I], and deposited in respondent's [K] escrow account number [    ].

(32) [L], Esquire, a former employee of respondent, acting as Mrs. [I's] replacement counsel, wrote to respondent requesting her file and to tender funds being held on Mrs. [I's] behalf.

(33) Respondent did not respond to these requests.

(34) On October 7, 1992, the Honorable [M] ordered that [L], Esquire, be substituted as counsel for [Mrs. I] and that respondent was to provide to [L] and Mrs. [I] both the file and all funds belonging to both Mrs. [I] individually and Mrs. [I], administratrix of the estate of [Mr. I].

(35) Subsequently, monies due Mrs. [I] were tendered to [L].

(36) On December 14, 1990, [N] was involved in an automobile accident.

(37) Subsequent to the accident, respondent was retained by [N] to represent her for injuries sustained as a result of that car accident.

(38) On September 28, 1992, [N] sent a letter to respondent discharging him and requesting that he turn over her file to her.

(39) Respondent does not recall this letter and did not respond to it.

(40) On October 6, 1992, [O], Esquire, [N's] replacement counsel, sent respondent a letter informing him of his discharge and requesting [N's] file.

(41) Respondent did not respond to that letter.

(42) During the months of October and November 1992, [O] sent respondent numerous letters and made several telephone calls to respondent's office requesting that he turn the file over to him.

(43) Respondent did not respond to any of those letters.

(44) Although he had not heard from respondent, due to the fact that [N's] statute of limitations of her claim was going to expire on December 14, 1992, [O] obtained the police report regarding her accident and filed a writ of summons against individuals involved in the accident, at court of common pleas trial division, no. [    ], *[N] v. [P]*, [    ], November term, 1992, no. [    ].

(45) Using the court term and number filed on the writ of summons, [O] obtained a court order dated November 25, 1992, signed by the Honorable [Q], compelling respondent to transfer [N's] file to him within five days of said order.

(46) Upon [O's] receipt of the file, he sent the insurance company involved a letter of his representation.

(47) On December 2, 1992, in response to one of those letters, [O] received a telephone call from [R] of the [S] Service Company advising him that the set-

tlement in the case had already been finalized with respondent on November 30, 1992.

(48) Subsequent to the settlement by respondent, [O] made several attempts to obtain the settlement check and release from the insurance carrier.

(49) [O] wrote to respondent requesting [N's] files and a statement that respondent was no longer representing [N]. Respondent did not respond to these requests.

(50) On July 20, 1988, [T] was involved in a motor vehicle accident.

(51) Subsequent to that date, [T] retained respondent for injuries sustained as a result of that accident.

(52) On May 19, 1992, [U], stepson and replacement counsel for [T], wrote to respondent requesting that he turn over [T's] and [V's] files to him and informing respondent that he was discharged.

(53) Respondent did not respond to that letter.

(54) On June 8, 1992, [U] again wrote to respondent requesting copies of [T's] and [V's] files and informing him again, he was discharged from representation.

(55) Numerous telephone calls were placed to respondent's office both by [T's] husband, [W] and his replacement counsel, [U], Esquire, seeking receipt of both [T's] and [W's] files.

(56) On April 22, 1987, at respondent's direction, an associate in his office, [G], Esquire, filed a complaint entitled *[X] v. [Y]* in the [    ] Court of Common Pleas, April term, 1987, no. [    ], in which respondent's office represented the plaintiff.

(57) Respondent received a $70,000 settlement offer from one of the defendants in that case, which respondent communicated to his client.

(58) On May 11, 1992, the Honorable [Z] wrote to respondent stating:

(a) that it was a matter of months since the court had heard from him or anyone representing [X] despite "a dozen telephone calls to you"; that

(b) none of those telephone calls had been returned;

(c) a summary judgment motion was filed on behalf of one defendant, and no answer was filed by respondent;

(d) that respondent's client had received a $70,000 settlement offer and that defense counsel never received any word back from respondent;

(e) that he strongly suggested that some efforts be made to have someone else cover respondent's files; and

(f) that he would put this file on hold until June 1, 1992 at that time unless he received direction to the contrary he would issue a rule asking why respondent should not be removed as counsel and notify respondent's clients to come in so the situation could be resolved.

(59) Respondent did not respond to that letter.

(60) On June 8, 1992, the Honorable [Z], on his own motion, issued a Rule to Show Cause which stated that:

(a) he had scheduled a status conference in *[X] v. [Y]* through publication in the *[AA]*;

(b) respondent failed to provide the mandatory pretrial brief;

(c) respondent failed to appear at the conference;

(d) efforts were made to contact respondent during the conference;

(e) when respondent was reached by telephone during the conference, respondent refused to attend the conference citing illness as a reason for respondent's absence and failure to monitor the case in the [AA];

(f) Judge [Z] advised respondent that respondent's cases should receive proper attention if respondent's illness was continuous;

(g) respondent assured the court that respondent's cases would be handled in a proper manner;

(h) a summary judgment motion was filed in the above-captioned case by defendant [Y], the [BB] and [CC] on December 6, 1991, and the response to said motion was due on January 5, 1992;

(i) no response on behalf of respondent's client was ever filed;

(j) repeated attempts were made by the court to contact respondent both by telephone and finally by letter dated May 11, 1992; and

(k) respondent neither returned telephone calls from Judge [Z's] chambers nor replied to the letter stating Rule to Show Cause would be issued if respondent did not contact Judge [Z's] chambers.

(61) That Rule to Show Cause was entered June 8, 1992, ordering respondent appear before the Honorable [Z] to show cause why respondent should not be removed as counsel for plaintiff [X].

(62) A copy of that Rule to Show Cause was sent to [X] along with cover letter dated June 8, 1992, signed by [DD], clerk to the Honorable [Z].

(63) Respondent took no action concerning the Rule to Show Cause.

(64) On July 14, 1992, it was ordered by Judge [Z] that respondent be removed as counsel for plaintiff [X], that respondent place no lien on the file for costs of

services for any work done by respondent or respondent's law office, that respondent and any representative of his law office were ordered to turn over [X's] complete file to either [X] or any attorney designated by [X].

(65) Respondent did not respond to any of the orders nor did he respond to either [X] or Judge [Z].

(66) On September 16, 1991, [EE] was involved in a motor vehicle accident with a car driven by [FF].

(67) In or about September 1991, [EE] requested that respondent represent him in a personal injury and property damage action arising out of that accident.

(68) [EE] called respondent's office many times during 1992, leaving messages with staff and on his answering machine.

(69) Respondent did not return these calls.

(70) [EE] had his parents call respondent's office, and they left messages during 1992.

(71) Respondent did not return these calls.

(72) In or about December 1992, [EE] contacted his parents' attorney, [GG], Esquire, and asked him to telephone respondent's office in an attempt to determine the status of his case.

(73) On December 15, 16, and 17, 1992, [GG] called respondent's office and left messages.

(74) Respondent did not return any of [GG's] calls.

(75) By letter to respondent dated January 15, 1993, [EE]:

(a) complained about respondent's failure to return any of his calls or those made on his behalf by his parents and [GG];

(b) discharged respondent as his attorney; and

(c) instructed respondent to forward the contents of his file to [GG].

(76) Respondent did not reply to that letter.

(77) Respondent did not forward [EE's] file to [GG].

(78) By certified letter to respondent dated January 18, 1993, [GG]:

(a) informed respondent that he had been retained by [EE] to assume his representation in the motor vehicle accident claim; and

(b) requested that respondent transfer [EE's] file to him.

(79) Respondent did not reply to that letter.

(80) Respondent did not file suit in this matter.

(81) Respondent did not return the contents of [EE's] file.

(82) In or about May 1990, [HH] retained respondent's firm to represent him in a personal injury and property damage action arising out of a motor vehicle accident which occurred on May 13, 1990.

(83) [HH] died on November 8, 1990, prior to the settlement of the motor vehicle accident claim.

(84) [HH] left a will dated March 21, 1979, which was admitted to probate.

(85) By decree dated November 26, 1990, the register of wills of [ ] County appointed [II] executrix of the estate of [HH].

(86) [II] retained [JJ], Esquire, to represent [HH's] estate.

(87) [II] asked respondent to turn over the motor vehicle accident claim file to [JJ].

(88) Respondent did not comply with that request.

(89) In or about January 1991, [JJ], Esquire, on behalf of [II] filed a petition requesting the orphans' court to issue a citation to respondent to show cause why

respondent should not surrender the motor vehicle accident file to [JJ].

(90) By decree dated January 24, 1991, the Honorable [KK] issued the citation that [II] had requested.

(91) By order dated March 18, 1991, Judge [KK] directed respondent to turn over the file on the motor vehicle accident to [II].

(92) On March 20, 1991, [II] came to respondent's office. At that time [II]:

(a) stated that she wished to have respondent continue representing the estate of [HH] in the motor vehicle accident case; and

(b) signed an affidavit to that effect.

(93) On March 28, 1991, [II] again came to respondent's office, at which time she requested that respondent handle the settlement of [HH's] estate.

(94) By letter dated April 18, 1991, respondent wrote to [JJ]:

(a) informing him that [II] wished to have respondent handle all matters related to [HH's] estate, and

(b) asking that he forward the estate file to respondent.

(95) By letter to Judge [KK] dated May 24, 1991, [JJ] stated that he was withdrawing from the case.

(96) On August 12, 1991, [LL], acting at the direction of respondent, filed an inventory for the estate of [HH].

(97) On September 19, 1991, [LL], acting at the direction of respondent, filed an inheritance tax return for the estate of [HH].

(98) On November 24, 1991, [II] died.

(99) [MM], the son of [HH] and [II], retained the law firm of [NN] P.C. to represent the estate of [HH].

(100) The law firm of [NN] P.C. unsuccessfully attempted to have respondent turn over the estate file of [HH] to them.

(101) By decree dated May 12, 1992, the Honorable [OO] directed respondent to show cause why respondent should not turn over the files, in his possession, of the estate of [HH] to [MM], c/o [NN].

(102) By decree dated June 1, 1992, [MM] was appointed administrator, d.b.n., c.t.a., of the estate of [HH].

(103) Respondent did not turn over the file of the estate of [HH] to [MM] following his requests and those of his attorney, [PP], Esquire.

(104) [T] retained respondent for injuries sustained as a result of a July 20, 1988 motor vehicle accident.

(105) On May 19, 1992, respondent was discharged in writing by [T].

(106) Respondent did not respond to that letter.

(107) On June 8, 1992, [W] wrote to respondent requesting a copy of the content of the file.

(108) Respondent did not respond to that letter.

(109) Replacement counsel then placed numerous telephone calls to the respondent seeking return of the files.

(110) To date, respondent has not responded to [T and W].

(111) Respondent, to this date, has not turned over the files as requested.

(112) On December 12, 1985, [    ] & [    ] [QQ] retained respondent to represent Mrs. [QQ] in an action against [RR] regarding injuries which Mrs. [QQ] experienced as a result of the use of the [SS].

(113) Between December 1985 and May 1992, Mr. & Mrs. [QQ] contacted the respondent periodically to determine the status of Mrs. [QQ's] claim.

(114) Between May and October 1992, Mr. & Mrs. [QQ] telephoned respondent and left messages on his answering machine on numerous occasions in an attempt to determine the status of the [QQ] case.

(115) Respondent failed to return any of those messages. Mr. [QQ] asked the respondent in writing to provide [Mrs. QQ's] files to them.

(116) Respondent failed to reply to that letter.

(117) Respondent failed to comply to the [QQ's] reasonable requests for information.

(118) Following receipt of Mr. & Mrs. [QQ's] written request, respondent failed to turn over the contents of [Mrs. QQ's] file.

(119) Respondent was a competent and functioning general practitioner from 1962 until approximately 1991.

(120) The cumulative effect of personal and family misfortunes, culminating with the serious health problems of his mother and the death of his father in 1991, caused respondent to suffer a major depression.

(121) Respondent testified that following his father's death in early 1991, he began having trouble coping with everyday problems in life. He did not go to his office on a regular basis, he stopped paying bills, he did not leave his home, and he was often unable to get out of bed. (N.T. 130-34, 142, 176-78.)

(122) Respondent began seeing a psychiatrist, [TT], in 1993. Respondent was placed on Prozac and other medications, with varying degrees of success. Dr. [TT]

eventually took respondent off all medications. (N.T. 136.)

(123) Respondent stopped seeing Dr. [TT] in 1994 because the doctor was ill and respondent was financially unable to continue seeing a doctor. (N.T. 171-72.)

(124) In approximately May 1994, respondent began to feel much better and was in control of the details of his life. He is not taking any medications for depression at the present time. (N.T. 146.)

(125) Friends of respondent testified that he currently is much better than he had been and appears to be like his former self. (N.T. 52-64, 79-94, 107-117.)

(126) Dr. [UU], a psychiatrist, testified that respondent was suffering from a major depressive disorder during the time period of the misconduct. The causes of the depression were a combination of family losses and problems and the resulting stress. (N.T. 186-89.)

(127) Dr. [UU] testified that there was a causal relationship between respondent's depression and his misconduct. (N.T. 193-94.)

(128) Dr. [UU] testified that respondent is not currently in a state of depression. (N.T. 191.)

(129) Respondent received three informal admonitions between July 1989 and December 1992.

### III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.1—A lawyer shall provide competent representation to a client.

(2) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C 1.15(b)—A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(5) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests.

(6) R.P.C. 3.5(c)—A lawyer shall not engage in conduct disruptive to the tribunal.

(7) R.P.C. 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct.

(8) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

Petitioner has demonstrated by clear and convincing evidence that respondent engaged in a pattern of misconduct. In 10 cases respondent was retained to represent clients and failed to protect their interests in the most minimal way, causing harm to their legal rights and expectations. The misconduct engaged in by respondent included failure to turn over to clients settlement funds belonging to them, neglect of legal matters, failure to communicate with clients, failure to return client files when requested, engaging in conduct dis-

ruptive to the courts, and failing to comply with court orders.

The primary purpose of the Commonwealth's method of lawyer discipline is to protect the public and the courts from unfit lawyers. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). Sanctions are to be imposed in accord with the misconduct and based on the circumstances peculiar to each case.

In respondent's defense, he offered psychiatric testimony, as well as his own testimony, to establish that he suffered from a severe mental depression during the period of time in which the misconduct took place. By doing so, respondent seeks to come within the standard set by the Pennsylvania Supreme Court for consideration of mental illness as a mitigating factor in imposing disciplinary sanctions. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). This standard states that in order for an attorney's mental infirmity to be considered as a mitigating factor, the attorney must demonstrate through expert testimony that he or she suffers from a psychiatric condition which caused the misconduct. Careful review of the record evidences that respondent has clearly and satisfactorily met his burden under *Braun.* Respondent produced the expert testimony of Dr. [UU], a psychiatrist. Dr. [UU] testified that respondent was in a major depressive state during the period of misconduct. The causes of this depression were a combination of respondent's father's death, other family problems and the resulting stresses and pressures. Dr. [UU] testified that in his opinion there was a causal connection between respondent's depression and his misconduct. This testimony was non-controverted and the further testimony of respondent and other witnesses relative to his behavior during the

time period in question bolstered the conclusion that respondent suffered from depression.

Although respondent's depression in no way excuses his misconduct, the board finds that his disorder offers an explanation for his actions, and it is a factor to be considered in determining the final disposition of this matter. Other factors to consider in the analysis are the testimony of respondent's fellow attorneys and friends and respondent's prior record of three informal admonitions given in 1989 and 1992.

Review of similar cases, while not a mandate as to the appropriate discipline for the instant case, indicates that a suspension of one year and one day is appropriate. In the case of *In re Anonymous Nos. 52, 79 & 116 D.B. 92 and 30 D.B. 93,* 24 D.&C.4th 447 (1994), an attorney neglected legal matters, failed to communicate with clients and failed to return files and unearned fees in 11 cases. Respondent offered no mitigation for his misconduct. The board recommended and the Supreme Court imposed a two-year suspension. In the case of *In re Anonymous Nos. 25 D.B. 89 & 71 D.B. 89,* 12 D.&C.4th 80 (1991), an attorney repeatedly failed to represent clients with reasonable diligence and competence. The attorney produced psychiatric testimony that he suffered from severe depression. However, the expert declined to opine that there was a specific causal connection between the depression and the misconduct engaged in. The board recommended a two-year suspension due to the attorney's misconduct and the lack of mitigating circumstances. In the case of *In re Anonymous No. 123 D.B. 90,* 17 D.&C.4th 464 (1992), an attorney mishandled and misappropriated $2,300 of client funds. While the board acknowledged the seriousness of the misconduct, it also noted that it was aware of the attorney's extreme personal

problems at the time of the misconduct. The board recommended and the Supreme Court imposed a one year and one day suspension. In the case of *In re Anonymous No. 91 D.B. 90,* 14 D.&C.4th 597 (1992), an attorney who neglected client cases and misrepresented the status of those cases was suspended for one year and one day. The board found that respondent's conduct raised serious questions as to the attorney's competence to practice law and recommended a suspension that would require the attorney to participate in the reinstatement process.

The board is persuaded by the facts of the instant case, as well as the prior case, that the appropriate discipline is a suspension of one year and one day. Such a suspension will require respondent to undergo the reinstatement process and will serve to protect the interests of the public and the courts.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], shall be suspended from the practice of law from the Commonwealth of Pennsylvania for a period of one year and one day, retroactive to June 30, 1993.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Carson did not participate in the March 7, 1996 adjudication.

## ORDER

And now, July 1, 1996, upon consideration of the report and recommendations of the Disciplinary Board dated May 8, 1996, it is hereby ordered that [respondent]

be and he is suspended from the bar of this Commonwealth for a period of one year and one day, retroactive to June 30, 1993, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.